## Case No. 7,994.

### LAKE v. HEQUEMBOURG.

[6 Biss. 325.] [1]

Circuit Court, N. D. Illinois. March, 1875.

NINTH ARTICLE ILLINOIS INCORPORATION ACT — ADOPTION BY MUNICIPALITY—VOTE OF PEOPLE.

Ninth article Illinois incorporation act. To constitute an adoption of this article, it is only necessary that it be adopted by such a declaration of the municipal authorities as indicated the will of the corporation, it is not necessary that it be by vote of the people.

On the sixth of February, 1874, the board of trustees of the town of Lake, by a vote of four out of five members constituting the board, entered into a contract with Charles E. Hequembourg, for the laying of water pipes in the streets of the town, without advertising for bids. The work under the contract was performed during the summer and fall of 1874, and payments were made from time to time by the town upon estimates presented by the contractor. After the execution of the contract a change took place in the membership of the board of trustees, and in November, 1874, a bill was filed by the town seeking to annul the contract, setting up that the town had no power to enter into the contract without first advertising for bids as required by section 1 of the act of April 15, 1873 (Rev. St. 1874, p. 250), and that the contract had been corruptly and fraudulently entered into by the former board of trustees.

The defendant answered denying fraud, and alleging that the contract was entered into by the town under the powers conferred by article 9 of the general law for the incorporation of cities and villages, approved April 10, 1872, and in force July 1, 1872. The defendant also filed a cross bill, praying that an account might be had between the town and himself, and that a decree might be entered in his

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

favor for the amount found to be due him upon such accounting. Upon the part of the contractor it was contended that the contract was executed in conformity with the requirements of section 50 of article 9, above mentioned, which provides that a contract may be entered into without advertising for bids by a vote of two-thirds of all the trustees elected. On the part of the town it was contended that all contracts, in regard to water-works, must be let under the act in regard to water-works approved and in force April 15, 1873, which requires all contracts to be let to the lowest bidder after three weeks notice by publication in a newspaper. It appeared from the evidence that the board of trustees of the town of Lake, by an ordinance passed in 1872, adopted article 9, above mentioned, as a part of the organic law of the town, and that no vote of the people was ever taken upon the subject. Three main questions were presented for the consideration of the court: 1st. Whether the execution of the contract was secured by fraud or corruption. 2nd. Whether the board of trustees had power to adopt article 9 without a vote of the people of the town. 3rd. Whether the power to make contracts in regard to water-works, conferred by article 9, was repealed by the act of April 15, 1873, in regard to water-works.

Bennett, Kretzinger & Veeder, for plaintiff.
John P. Wilson, for defendant.

DRUMMOND, Circuit Judge. The first question presented in this case is whether there was fraud in the making of the contract. The rule is well settled that fraud is never to be presumed, and there is no evidence offered from which I can say that the trustees of the town have been guilty of any fraud.

The next question is, had the town of Lake authority to make this contract? The town of Lake was in existence as a corporation at the time the act in relation to corporations in general was passed, and I can have no doubt the one hundred and sixty-eighth section of the ninth article, to be found on page 240 of the Revised Statutes of 1874, operated on the town. That section is: "Any city or incorporated town or village may, if it shall so determine by ordinance, adopt the provisions of this article without adopting the whole of this act, and, where it shall have so adopted this article, it shall have the right to take all proceedings provided for in this article, and have the benefit of all the provisions hereof."

Now, as to the adoption of this article since by ordinance: It is said that this act provided that the various provisions of this law should be adopted; that the corporation should be created by a vote of the people; and as that provision existed, therefore when this section declared that any city or incorporated town or village might adopt article 9 by ordinance, it meant that it was an ordinance to be enacted in pursuance of a vote of the people. I think that can hardly be inferred from

this law. If it had been the intention of the legislature that that provision should be adopted only by a vote of the people, it certainly would have so stated.

This was a law that operated upon towns existing at the time it was passed, and, when it declared that the ninth article might be adopted by ordinance, it merely meant that it should be adopted by such declaration of the town authorities as indicated the will of the corporation itself, and a determination to make it a part of the existing provisions of law operating upon the town.

The next question is whether the town had the right to make this contract by existing law independent of the act of the 15th of April, 1873. The law under which it is claimed that this contract was made declared that the corporate authorities of cities and villages were clothed with the power to make local improvements by special assessment or by general taxation, or otherwise, as they should by ordinance prescribe.

Now, there might have been possibly some question in relation to the authority conferred by this statute as to the construction of these water-works, had it not been for the law of 1874. The act of the 15th of April, 1873, (Laws 1873, p. 190; Rev. St. 1874, p. 250), was a special act authorizing cities and incorporated towns and villages in the state to provide for a supply of water for the purposes of fire protection, and for the uses of the inhabitants.

That law contained various provisions connected with the supply of water; and the question is whether that law repealed by its terms the previous law which was in force. Its language is undoubtedly general: "All cities, incorporated towns, and villages in this state * * * are hereby authorized and shall have power to provide for a supply of water," and then follows this proviso: "That all contracts for the erection or construction of such works or any part thereof shall be let to the lowest responsible bidder therefor upon not less than three weeks public notice of the terms and conditions upon which the contract is to be let, having been given by publication," etc. Now, there is no repealing clause in this law, of prior laws; and the rule universally applicable to such cases is that if the prior law can stand consistently with the provisions of the subsequent law, it shall remain as a valid law. They shall be so construed by the court.

Now, I agree that if the provisions of the subsequent law are necessarily repugnant to the prior law, and the two are so inconsistent that they cannot be reconciled, the subsequent law must be construed as repealing the prior law; but it is only when those conditions exist. Here I think there are various conditions contained in the prior law, and they are of such a character as to indicate that the two laws may stand together.

Then, that being so, what is the effect of the act of the 17th of March, 1874 (Rev. St. 1874,

p. 251), upon the law in force prior to April, 1873? It is substantially a legislative construction of the prior law so far as this is concerned; it concedes the existence of the right in towns and villages to supply themselves with water, under the ninth article of the law which has been referred to. It is true that it is said to be prospective in its operation, "that whenever the corporate authorities of any city, town, or village shall provide by ordinance for the laying of water supply pipes, to be paid for by a special assessment to be made under the provisions of article nine of the act of the general assembly, entitled, etc.," therefore making a special reference to article nine.

Now, suppose it is prospective in one sense. The contract was made with reference to a law subsequently to be passed, so understood by the parties, and, when the law is passed as we find it, it must be supposed to include within its operation the contract that was made in this case, under the general law, when, by the terms of the contract itself, it was clearly within the contemplation of the parties that, until this law of 1874 was passed, no bonds could be issued to comply with this contract. It would be sticking in the bark to say that these laws did not operate upon this contract, and upon the property and property-owners in this town, so as to authorize the issue of the bonds to pay for a contract which had been previously made under the authority of the ninth article. It is conceded that, without the law of April 15th, 1873, the town authorities, by a vote of two-thirds, could dispense with the notice which is required absolutely by the act of April 15th, 1873.

These are the views I now entertain of this case. I think this contract was a valid contract. I think there was no fraud in it to vitiate it, but I wish to preserve some power over the case and over facts which may subsequently be developed. I will therefore not dismiss the original bill, but I will refer the case to the master under the cross-bill, with specific directions to report. The counsel may draw up an order to that effect requiring the master to report, among other things, the amount of profits these parties have made under this contract.