## Glass' Estate.

Argued May 19, 1938. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas B. K. Ringe,* with him *George W. Hoft,* for appellant.

*Ralph C. Busser, Jr.,* with him *R. W. Archbald, Jr.,* for appellees.

Opinion by Mr. Justice Maxey, June 30, 1938:

The question here is whether or not a certain writing executed by a decedent and found after her death in her safe deposit box was testamentary in character.

Sara C. Glass died on April 12, 1935. Ten days later there was admitted to probate by the Register of Wills of Philadelphia County, a will of this decedent, dated April 5, 1933. Letters testamentary were on that date granted to the Girard Trust Company, the executor named therein. On May 5, 1936, Charles Gearhart, the appellant, appealed to the Orphans' Court of Philadelphia County from the probate referred to and filed a proper bond. He later presented his petition for a citation to show cause why the decree of probate should not be opened and leave granted to produce and offer for probate as a codicil to decedent's will a certain envelope bearing on its face a writing alleged to be testamentary in character and containing securities of the value of $3,350. These securities consisted of the following:

| | |
|---|---:|
| 4th Liberty Loan 4¼% bond | $ 150 |
| Finland 7% bond | 1,000 |
| Brazil bonds | 1,000 |
| 2 5% 20-year funding bonds | 200 |
| Luzerne Co. Gas & Elec. Co. 6% bonds | 1,000 |
| Total | $3,350 |

This envelope was unsealed and on its face it contained the following:

"PROPERTY OF CHARLES C. GEARHART—
"c/o JOHN WANAMAKER,
"PHILADELPHIA.
"TO MY EXECUTOR—
"PLEASE DELIVER ENCLOSED TO MR. GEARHART AT THE ABOVE ADDRESS.
"Sara C. Glass.
"Held for safe keeping."

It was admitted that the words, "Held for safe keeping," and the signature were in the handwriting of de-

cedent, that the envelope was found in the safe deposit box which the decedent had with the Girard Trust Company and that the will itself was found in the will vault of that company. It is conceded that the decedent enjoyed both the income from, and the full control over, the securities in the envelope until the date of her death.

There was also found in decedent's safe deposit box another envelope bearing, inter alia, the words: "Property of Mrs. Louisa Reed." This envelope contained a deed and a United States 4th Liberty Loan Bond.

In his opinion dismissing the appeal from the probate of the will, the hearing judge said: "In addition to those two envelopes there was found an income tax return for the year 1934, to which there was attached a list of securities. It is admitted that the list is in the handwriting of the decedent. The contents of the envelope were as shown by said list, and as noted by the memorandum on the envelope [made by an officer of the Trust Company after the box was opened]. This list is dated February 23rd, 1934. It shows that the figure 500 opposite 4th Lib. Loan 4¼ was changed to read 150, and that the figure 200 opposite U. S. of Brazil Temporary Bond was changed from 100. As the testimony shows that one of the U. S. Brazil Bonds was received May 11th, 1934, the change was evidently made after February 23d, 1934, and it would seem it was made on the same day it was received, for the records of the Girard Trust Company show that she made a visit to the box on that day."

The paper offered as a codicil was not dated, but appellant contends that the foregoing facts and other similar facts in evidence relating to the receipt of bonds, such as a Brazil $100 bond placed in the box in May, 1934, and the safe deposit records showing that the decedent visited the box on February 23, 1934, and on April 13, 1934, two days before the 4¼% Liberty Loan Bonds owned by decedent were called, and again on May 11, 1934, the date on which the last of the two $100

Brazil Bonds was received from the Girard Trust Company, all show that after making her will in April, 1933, the decedent having named the Girard Trust Company as her executor, went to the box and placed therein the writing which she intended to operate as a codicil making Gearhart a legatee of the "property" contained in the envelope bearing the memorandum.

Appellant in his brief says: "From the testimony produced at the hearing it was shown that the codicil was executed after the will was made. It was established as a fact that when the decedent's box was opened after her death, it contained the signed testamentary instrument [the questioned paper] and a pen-written list of securities in the handwriting of the decedent dated February 23, 1934 (the will was dated April 5, 1933) which was an exact statement of the securities contained in the envelope. This list contained obvious corrections and interlineations thereon, which must have been made by the decedent at a later date to make the list conform to facts as they developed."

It is a legitimate inference that the writing in question was regarded by the decedent as a "live" document subsequent to the date of her will, April 5, 1933, and that if it was a testamentary paper, it was not revoked by her will's revoking clause which expressly referred to "all other wills by me at any time heretofore made."

Exceptions were filed to the adjudication and these were dismissed by the Orphans' Court, and the decree dismissing the appeal was affirmed.

The auditing judge held that the language on the envelope was "a direction to the executor to deliver to Mr. Gearhart his own property." He said further: "A will is an expression of a man's intention as to the disposition of his property to take effect upon his death. The signer in disposing of his own property may impose upon the executor certain administrative duties in connection therewith. *The direction, however, in this case has nothing to do with the property of the decedent.*

[Italics supplied.] The auditing judge is of opinion that the document in question is not testamentary, and so rules."

The Orphans' Court endorsed the view of the auditing judge, saying: "The words in question do not in themselves grant any interest, either in presenti or in futuro. On the contrary their sole import is that the contents of the envelope constitute the property of Mr. Gearhart, held by the decedent for safe keeping, with a direction to the executor to deliver the securities to the owner. Certainly there is no suggestion expressed or implied by the use of these words, that there was intended a *gift* inter vivos or a bequest. On its face the paper is but a *declaration of ownership*. The direction to the executor to deliver does not constitute the writing a will. Such a delivery contemplates a mere corporal act relating only to custody: See *Jacoby's Estate*, 190 Pa. 382, p. 392: 'But the the delivery of the box is a mere corporal act which relates only to its custody. Not a word containing any testamentary intent or purpose, express or implied, appears in the writing. There is not the least reference to the contents of the box or to any paper or thing therein contained. That it is to be delivered to Stevenson after the death of Jacoby imports nothing but a physical and necessary change of the custody of the box. Jacoby being dead, some one must have the custody which Jacoby held until the moment of his death. This, and this alone, is the full and absolute import of the words. . . . Had there been any words which directed Stevenson to do anything with the contents, such as to deliver the envelopes which had names on them to the persons named, or to see that the contents were properly distributed, or words of a similar import, it might be that a testamentary intent might be attributed to them.' "

The above finding that the appeal cannot prevail because the securities in the envelope were "Mr. Gearhart's own property" is of only academic value to the

appellant, for his claim for the securities has already been denied by the executor, and if he later renews it, he will be incompetent as a witness to press it, the other party to the thing or contract in action being dead (Act of May 23, 1887, P. L. 158, sec. 5, cl. [e]; see *Parry v. Parry,* 130 Pa. 94, 18 A. 628), and he will also be confronted with the rule that there can be no valid gift inter vivos without delivery. The equities of this case are clearly with the appellant.

The legal question involved is admittedly a close one. We think, however, that it can be distinguished from *Jacoby's Estate* (supra), which the court below held to be decisive of this issue. In that case Stevenson to whom the "box" was to be delivered was at the time and long had been "the confidential attorney of the deceased." This court, after so describing him, said of the words, "In case of my death I want this box given to my attorney, A. K. Stevenson . . .": "There is but one idea that is possible to be extracted from the words and that is the delivery of the box after his [decedent's] death to the person named." As appears from the excerpt from the *Jacoby Case,* quoted at length by the court below and incorporated above in this opinion, there was no reference made by testator to the *contents* of the box or to any papers contained therein. From all that appears in decedent's "direction," Stevenson was to have only *physical custody* of the box. This was entirely in harmony with his power as one of the two executors of the estate named in the will and as the decedent's "confidential attorney." (By decree of the Register, Stevenson was appointed sole executor.) This court said in that case: ". . . that will was prepared by the very person to whom the custody of the box was committed, . . . that person was appointed an executor of the will. How is it possible, in view of this consideration, to derive an inference that when such a person, in such circumstances, was merely appointed by the words in question to take the physical custody of the box, the

whole testamentary scheme of the testator, as expressed in his written will, was to be absolutely destroyed, and another one set up without express words of any kind, without the least degree of implication from doubtful words, with not a solitary word indicating any intention to change, or alter, much less to strike down, any of his carefully expressed, fully written out testamentary dispositions previously made. And, especially, how can it possibly be inferred that there was an intent, by the use of words merely directing a necessary change of the custody of the box, to set up in the place of his formal written will a mere mess of absurdities, as will be shown later on, impossible of reconciliation either with the written will or with any real, conceivable, intelligent disposition of his estate?"

In the instant case, the thing directed to be "delivered" was designated as "Property." The word "property" is customarily used to designate something of value; the "box" which was to be delivered in the *Jacoby Case* did not necessarily indicate anything of more than *nominal* value. It was not described as "property" or as anything else having substantial value. In the *Jacoby Case,* what the testator directed was that upon his death his executor should immediately take physical custody of the box which contained the large assortment of valuable securities belonging to the decedent's estate. Upon qualification as executor, the person named would by law be given this authority, but the testator either did not trust this detail to the law or he wished to make it specially emphatic that his executor was to take possession of the box at once.

To our mind, the direction of Miss Glass, the decedent, to her executor was testamentary in character. Until Miss Glass died, no executor of her estate could come into legal being. The direction to her executor, therefore, "spoke" as of the time of the decedent's death. *At that time* she, speaking through the writing, said in effect to her executor: Deliver or give to Charles C.

Gearhart the within property. The phrase "Property of Charles C. Gearhart" did not mean it was *his* property when the phrase was written, but that it was *to be* his property the moment the executor saw the phrase.

Gearhart's situation in respect to that property was analogous to that of a grantee in an undelivered deed. Miss Glass could have destroyed the envelope bearing the memorandum and that would have been the end of Gearhart's expectant interest in that property, for, *in fact,* the property *was* Miss Glass' at all times while the memorandum was resting in her box.

It is evident from this entire record that Miss Glass did not wish to mention Gearhart in her formal will but that she did want the property in the envelope to go to him at her death and that she thought this objective could be attained by the simple device of executing a writing which would not see the light of day until it would come into her executor's possession, declaring the property to be Gearhart's and directing her executor to deliver it to him. She being unlearned in the law apparently thought that all the executor would have to do would be to physically hand over the property to the recipient named as though she had merely held the property in her box for safe keeping. That is probably the reason she added after her signature: "Held for safe keeping." In *fact,* it was not so held, but Miss Glass may have thought the notation would facilitate the execution of her purpose and make it appear to her executor that she was not giving Gearhart the securities, but had only been "keeping" them for him. Since she had collected and cashed the coupons on these securities and exercised full ownership over them, the conclusion is inescapable that the property was not Gearhart's but that she intended it to be his *after her death,* and that therefore her direction to her executor in the writing invoked by appellant was testamentary in character and that it must be treated as a codicil to testator's will. If the decedent's testamentary intent was not

clearly manifested from the writing itself, the extrinsic evidence offered by appellant in this case completely fortifies the conclusion we have reached as to her testamentary intention.

In *Losch's Estate,* 264 Pa. 58, 107 A. 375, a crudely drawn paper in which a decedent ordered his executor to sign and deliver a deed was held to be testamentary in character. This court said in that case: "The paper . . . vested no present interest, but only appointed what was to be done after the death of the maker, and that is the test of its character: *Turner v. Scott,* 51 Pa. 126."

In *Wolfe's Estate,* 284 Pa. 169, 130 A. 501, this court held that a writing as follows: "Central Trust Company My executor" "For his labor Pay to the order of [a person named] $4,700," duly signed, is testamentary in character and properly admitted to probate as a codicil.

The decree appealed from is reversed, and the record remitted for further proceedings in accordance herewith, costs to be paid by the estate.