[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 173 
This is an appeal from a judgment of the District Court of Grant County affirming a decree of distribution of the County Court of Grant County in a proceeding for the probate of the last will and testament of James Glavkee, deceased.
The decedent, James Glavkee, died on or about September 4, 1943, at Leith in the County of Grant in this state. He left a last will and testament which reads as follows:
"I, James Glavkee, a single man, Now past 73 years old, a Resident of Leith Post Office Grant County N Dak on this first day of Oct 1942 appoint my neices, one Christine Chadwick of Breien Post Office Morton County N. Dak. for her to act is Executrix for my Estate after I am death, including Real Estate and Personal Property, Money notes and accounts, and I empower my Executrix to collect all outstanding Notes and accounts, which my not been collected before my death, and for her is my Executrix to *Page 176 
make distribution of all income from Estate herein mentioned in equal shares to my Heirs named below in this Will.
"For Land described here in being SE 1/4 of Section 24-133-87 of Grant County N Dak. I have prepared a Deed to my nephew one Carl Glavkee of Baldwin Post Office Burleigh County N Dak. Said Deed I wish my Executrix to hand to Carl Glavkee after I am death.
"I also have four Federal Farm Mortgage Corporation Bonds which together amounts to $1600.00 Sixteen hundred Dollars said Bonds I wish my Executrix to hand to my neices one Evelyn Westling of Woodburn Post Office, State of Oregon All income from other Estate, except Land and Bonds must be divided in Equal shares to my Heirs named below in this Will.
"I hereby revoke all former Wills, made by me at any time. First settle all Debts and pay Funeral Expenses, and also erect a suitable dark Granite tombstone, not to exceed $150.00
 Names of Heirs below
Christine Chadwick of Breien Post Office Morton County N Dak Chris Glavkee of Breien Post Office Morton County N Dak Carl Glavkee of Baldwin Post Office Burleigh County N Dak John Glavkee, now go by name of John H. Hanson
 1405 N Jordan Miles City Mont
In witness hereof I have here to set my hand this 25th day of May One thousand Nine Hundred and Forty three James Glavkee testator
Witnesses
A. Landaas
Sam Landaas
Hans Landaas"
Such last will and testament was written on a sheet of plain white paper. With the exception of the signatures of the subscribing witnesses the instrument is wholly in the handwriting of the decedent, James Glavkee.
The heirs at law of said James Glavkee at the time of his death were: Christ Glavkee, John H. Hanson, Christine Chadwick, Evelyn Westling, Carl Glavkee, Glen Nelson, Clarence *Page 177 
Nelson, Marion Olson, James Nelson and Reynold Nelson.
After the death of James Glavkee there was found in his dresser drawer in the room which he had been occupying in Leith, North Dakota, an envelope addressed to Christine Chadwick. The address on the envelope was in the handwriting of the deceased, James Glavkee. The envelope contained the above mentioned last will and testament, and also a deed executed and acknowledged by James Glavkee conveying to Carl Glavkee of Baldwin, Burleigh County, North Dakota, the SE 1/4 of Section 24, Township 133, Range 87. The deed is on a regular printed form in general use in this State. The blank lines in the printed form such as the names of the parties, the consideration, and the description of the land were all filled in with appropriate words with pen and ink by the decedent James Glavkee himself. The deed is dated October 1, 1942. The execution of the deed was attested by two subscribing witnesses, and was acknowledged by James Glavkee before a notary public in Grant County, North Dakota on April 6, 1943. The deed recites receipt by said party of the first part (James Glavkee) of the sum of One Dollar ($1.00) and other consideration to him in hand paid by said party of the second part.
On September 9, 1943, the said Christine Chadwick, who was appointed in the will as executrix filed with the county court of Grant County a petition in due form for proof and probate of the will. Citation was duly issued and served upon the heirs at law of said James Glavkee, deceased, as required by law, setting the petition for hearing on October 25, 1943. On the day so appointed the matter came on for hearing pursuant to the citation. There was no contest. Some of the respondents filed a written request that the will be admitted to probate. After the hearing, an order was made on October 25, 1943, admitting the will to probate. No appeal was taken from such order. Christine Chadwick qualified as executrix and took into her possession all the assets and property of the estate. The final decree of distribution distributed the estate as follows: To Carl Glavkee, the SE 1/4 of Section 24-133-87; to Evelyn Westling, four Federal Farm Mortgage Corporation bonds and $64.00 in cash *Page 178 
being the balance of interest collected on such bonds; to each of the respondents, John H. Hanson, Christ Glavkee, Christine Chadwick, and Carl Glavkee, one-fourth of the remaining assets of the estate which consisted of cash. Glen Nelson, Clarence Nelson, James Nelson and Marion Olson appealed to the district court from the final decree of distribution and demanded a trial anew in the district court and that "all the issues therein be tried and determined anew in the said court and that said district court hear the allegations and proofs of the parties and determine all questions of law and fact therein." The matter came on for trial pursuant to the appeal.
Upon the trial the parties appeared by their counsel. The papers transmitted by the county court on the appeal to the district court including the will, the petition for proof and probate of will, the certificate of proof of will, the order admitting the will to probate, and the "testimony of the subscribing witnesses" were admitted in evidence upon the trial in the district court pursuant to stipulation by the counsel for the respective parties. Such counsel also entered into a stipulation as to who were the heirs of the said James Glavkee and the degree of the relationship of each of such persons to the deceased. Counsel for the appellees offered in evidence a deed (the deed mentioned in the will) executed by the deceased, James Glavkee, as grantor to Carl Glavkee as grantee for the SE 1/4 of Section 24, Township 133, Range 87, in Grant County. Such deed had not been offered or received in evidence in the county court. Counsel for the appellants objected to the admission of the deed. The deed was admitted. Thereafter counsel for the appellees on the appeal from the county court moved that the record in the case be remanded to the county court for the purpose of permitting such deed to be offered and received in evidence and to permit the county court to receive and file and probate such deed as part of the last will and testament of James Glavkee, deceased. The district court granted the motion. In Re Glavkee's Estate, 75 N.D. 118, 25 N.W.2d 925. The case was accordingly remanded to the county court, and additional evidence was taken and the deed was offered and received in evidence. Additional findings were *Page 179 
made by the county court and that court made an order that such deed be probated as part of the last will and testament of James Glavkee, deceased. The record of the proceedings had in the county court after the remand was thereupon duly certified and transmitted to the district court. The district court thereafter made findings and conclusions sustaining in all respects the distribution made in the final decree of distribution. Judgment was entered accordingly. The said Glen Nelson, James Nelson, Clarence Nelson, and Marion Olson have appealed to this Court from the judgment rendered by the district court and have demanded a trial anew in this Court.
In the brief of appellants on this appeal it is said:
"The question presented on this appeal is the interpretation and construction of the decree of distribution in an olographic will.
"The substance of the decree of distribution distributes the property to the appellees, and cuts out the respondents. Such decree distributes and awards the real property to the appellee, Carl Glavkee; the Federal Farm bonds to the appellee Evelyn Westling and the cash in banks at Carson, Mandan, and Sheridan, Montana, consisting of several thousand dollars to the other appellees."
Appellants contend: (1) That it was error to award to Carl Glavkee the tract of land described in the will; (2) That is was error to award to Evelyn Westling the four Federal Farm Mortgage Corporation bonds; (3) That it was error to award to Christine Chadwick, Christ Glavkee, Carl Glavkee, and John H. Hanson the remainder of the assets of the estate in equal shares. Appellants contend that the will did not provide for such disposition of decedent's property and that the distribution so made is not in accordance with the provisions of the will. The position of appellants' counsel with respect to the will is thus tersely stated in their brief: "This Will is a will all right, but it only does two things, namely, it appoints an executrix, and second, it bequeaths the income from all the estate of the testator except the income from the land and the bonds to the heirs named in the Will, and that is all that it does do." The contentions thus advanced will be considered in the order stated. *Page 180 
The first rule in the construction of a will is to ascertain and give effect to the intention of the testator. 57 Am Jur, Wills, Sec 1133, p 726; Thompson, Construction of Wills, Sec 41, p 48; NDRC 1943, Sec 56-0501; Matter of Gray's Estate, 27 N.D. 417,424, 146 N.W. 722, LRA1917A 611; 2 Page on Wills, Lifetime Edition, Sec 918, p 804, et seq.
"The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will." 69 CJ p 59, Sec 1119.
"The sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from a full and complete consideration of the entire will, when read in the light of the surrounding circumstances. . . . Effect must . . . be given to such intention, if it does not violate some rule of law, which exists for the purpose of limiting the power of a testator to dispose of his property as he wishes." 2 Page on Wills, Lifetime Edition, Sec 918, pp 804-808.
"The courts have stated this principle in various forms, among which may be cited, by way of example, such statements as the following: The chief object and purpose in construing a will is to ascertain and give effect to the intention of the testator; the cardinal rule of testamentary construction is to ascertain the intention of the testator and give it effect; the construction of any will must be for the purpose of determining the dominant intent of the testator; if the testator's intent can be clearly perceived or ascertained it must prevail, a will is to be so interpreted as to carry out the intention of the testator; a will must be construed so as to give full force and effect to the purpose of the testator; in construing a will the courts must give effect to the intention expressed by the testator and carry out the object desired by him in disposing of his property; the whole effort, in the construction of a will, is to ascertain and give the fullest possible effect to the intention of the testator; the court will place itself in the position of the testator, ascertain his intent from the provisions of the will, and enforce it; the intention of the testator is the basic and fundamental rule in the construction of wills; the intent of the testator will control or govern the construction of a will; the purpose of construing a *Page 181 
will is to ascertain and give effect to the intention of the testator; the testator's intent is the all-important consideration in the construction of wills." 57 Am Jur, Wills, Sec 1133, pp 726-729.
The intent of the testator which must be discovered, if possible, and carried out means his actual personal intent at the time he executed the will and not his mere conventional intent inferred from the use or omission of any set phrase or form of words. Thompson, Construction of Wills, Sec 42, p 51; 69 CJ p 58.
"While the courts are bound to have regard to any rules of construction which have been established, it is to be remembered that rules and presumptions relating to the construction of wills are subordinate to the intention of the testator where that has been ascertained or is ascertainable, and must yield thereto, however crudely or artificially (inartificially) the will may be drawn." 57 Am Jur, Wills, Sec 1135, pp 731-732.
"Wills are frequently inartificially drawn, and for this reason they should receive greater liberality of construction than is to be given to ordinary legal instruments and the fact that a will was inartificially drawn by an unskilled person will be considered in its construction. The court must do everything in its power to discover the testator's intention, and any mere indistinctness in the phraseology of the instrument, or awkwardness of expression in the mere words used must be so dealt with, if reasonably possible, as to effectuate, and not overthrow, the dominant intent of the testator." Thompson, Construction of Wills, Sec 4, pp 3-4.
"The language used in the will, is only the evidence of the intention of the testator; and however incorrect, imperfect, or ungrammatical the language may be, as far as it furnishes satisfactory evidence of the testator's intention, that must prevail." Loring v. Sumner, 23 Pickering 98, 103.
"Imperfection of expression of testator's intention will not defeat his intention, if it can be clearly ascertained from the will, and the intent which controls is that which is manifest, either expressly or by necessary implication from such language. Such intention will be given effect, regardless of the form of words used and of the absence of technical terms." Thompson, Construction of Wills, Sec 45, pp 58-59. *Page 182 
"In construing the language of the will, substance rather than form must be regarded, and, if the testator's intention can be ascertained to a reasonable certainty from the whole will, it must be given effect, however informal or inartificial the terms or language employed, and especially so where to the lay mind the words seem simple and unequivocal." 69 CJ pp 71-72, Sec 1126.
In Clark v. Johnston and Norrie, Exrs. of Boorman, 18 Wall 493-509, 21 L ed 904-908, the Supreme Court of the United States said: "Of all legal instruments wills are the most inartificial, the least to be governed in their construction by the settled use of technical legal terms, the will itself being often the production of persons not only ignorant of law but of the correct use of the language in which it is written. Under this state of the science of the law, as applicable to the construction of wills, it may well be doubted if any other source of enlightenment in the construction of a will is of much assistance, than the application of natural reason to the language of the instrument under the light which may be thrown upon the intent of the testator by the extrinsic circumstances surrounding its execution, and connecting the parties and the property devised with the testator and with the instrument itself." No express words of gift or particular forms of expression are necessary if the intention to make a testamentary gift clearly appears in the will. Thompson, Construction of Wills, p 163; 57 Am Jur, Wills, Sec 1148, p 746.
"No particular words or conventional forms of expression are necessary to enable one to make an effective testamentary disposition of his property, where the testator's intent is apparent the courts will give that intent effect although he failed to use apt legal words in a bequest or devise. His intention is not to be defeated merely because he failed to clothe his ideas in technical language, but, when ascertained, is to be implicitly obeyed, however informal or defective the language may be in which it has been expressed." 57 Am Jur, Wills, Sec 1148, p 746.
"In interpreting an ambiguous will, evidence of the situation of the testator and the circumstances surrounding him at the time of the making of the will is admissible in order to enable the court to place itself in the position of the testator, and, from *Page 183 
this standpoint, to determine the meaning of the language used in the will. Every claimant under a will, it has been said, has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator. The rule against the admission of evidence to explain wills does not exclude the circumstances in which the testator was placed or the collateral facts surrounding him at the time the will was executed, since the law is not so unreasonable as to deny to the reader of an instrument the same light which the writer enjoyed. It is, however, to be borne in mind that no extrinsic evidence is ever competent to contradict, vary, or add to the terms of a will, and under this fundamental rule, evidence even of the circumstances surrounding the testator cannot be received for the purpose of showing an intention different from that contained in the will, or to import into the will an intention not therein expressed." 57 Am Jur, Wills, Sec 1094, pp 701-702.
A bequest or devise may be made by implication. 57 Am Jur, Wills, p 782, Sec 1192; Thompson, Construction of Wills, pp 162-163, Sec 91; 30 A E Ency L, Second Edition, p 697; 2 Page on Wills, Lifetime Edition, p 861, Sec 830; 69 CJ 69.
Thompson (Thompson, Construction of Wills, pp. 162-163, Sec 91) says: "Since no particular form of expression is necessary to constitute a legal testamentary disposition of property, a devise or bequest may be held to exist by implication where the context requires it, or where such is the manifest intention of the testator."
American Jurisprudence (57 Am Jur, Wills, pp 782-783, Sec 1192) says: "A bequest or devise may be made by mere implication, unless the implication violates public policy or some established rule of law, but to raise such implication it must be necessary to do so in order to carry out a manifest and plain intent of the testator which would fail unless the implication is allowed. Gifts by implication are not favored, and cannot rest upon conjecture. Such a gift will not be inferred from mere silence, but must be founded on expressions in the will, and is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow *Page 184 
to express as distinctly as he should have done. It has been said that the probability of an intention to make the implied gift must be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. On the other hand, it is not required that the inference be absolutely irresistible; it is enough if the circumstances, taken together, leave no doubt as to the testatorial intention, and in some cases it is said that the implication may be drawn from slight circumstances appearing from the will."
There is a strong presumption that when a man makes a will he intends to dispose of his entire estate and does not intend to die intestate as to any part of his property. 2 Page on Wills, Lifetime Edition, Sec 926, pp 845-848; 57 Am Jur, Wills, Sec 1158, pp 754 et seq; 30 A E Ency L, Second Edition, p 668; 69 CJ p 91, Sec 1147 b. The presumption against an intestacy is especially strong where the testator has attempted to insert a general residuary clause in the will. 2 Page on Wills, Lifetime Edition, p 848, See 926; 57 Am Jur, Wills, Sec 1158, p 756; 69 CJ, p 95, Sec 1147 b.
"The natural and reasonable presumption is that when so solemn and important an instrument as a will is executed, the testator intends to dispose of his whole estate, and does not intend to die intestate as to any part of his property, which presumption is overcome only where the intention of the testator to do otherwise is plain and unambiguous, or is necessarily implied." 30 A E Ency L, Second Edition, p 668.
Bearing in mind the fundamental principles above stated, we approach the questions presented for determination on this appeal.
Appellants contend that the district court should not have remanded the record to the county court; that the county court was without authority to entertain and determine an application for probate of the deed as a part of the will, and that in any event the testator had no intention to incorporate the deed in the will. The sum of the various contentions is that the deed was not incorporated in the will and was not entitled to be admitted to probate as such. We are inclined to the view that the testator did not manifest an intention to incorporate the deed in *Page 185 
the will, and our decision upon the questions presented for determination here is made on the theory that the deed is not incorporated in the will; and in construing the will we are not concerned with the order made by the county court admitting the deed to probate. But it does not follow that because the deed was not incorporated in the will that the deed was not admissible in evidence upon the trial in the district court. The rule that an extrinsic instrument which is referred to in a will may be admitted for the purpose of aiding in the interpretation and construction of the will, although it is not a part of the will, is distinct from the doctrine of incorporation of extrinsic documents in a will by reference to such instruments in the will. 57 Am Jur, Wills, pp 193-194, Sec 233. Note: 144 ALR at p 716, First Column; Note: 94 ALR pp 254-255.
"It is well settled that an extrinsic instrument, book, object, or matter specifically referred to in a will, and duly identified, is admissible to aid in the interpretation of the will." 57 Am Jur, Wills, p 708, Sec 1108. See, Re Well's Estate. Wells v. Wells et al. 184 Wis. 242, 199 N.W. 52; Thompson's Executors v. Lloyd, 49 Pa St R 127; Kidd et al. v. Borum, 181 Ala. 144,61 So. 100; Ann Cas 1915C, 1226. In Thompson's Executors v. Lloyd, supra, the Supreme Court of Pennsylvania had occasion to consider the admissibility of a deed referred to in a will. In its opinion in the case the court said:
"The deed can have no operation as a conveyance of the title because it was not delivered in the lifetime of the grantor; but it existed, and may be taken in connection with the will to explain the language quoted above. Wills often refer to deeds, bonds, and other instruments of writing which exist independently of themselves; and to explain the intention of the testator recourse is always had to the instrument referred to. It becomes in some sense a part of the will, and is to be taken in connection with it to get at the testamentary purpose.
"So using the deed in this instance, to interpret the allusion in the will, there can be no doubt that the latter received the proper construction in the court below, and that Mrs. Lloyd holds, under the will, the title to the farm, subject to the life estate of Barbara Clough in the two acres." *Page 186 
The will involved here specifically referred to the deed. The deed in no manner contradicted or varied any of the provisions in the will. On the contrary it was in harmony with and directly corroborative of what was said in the will. There is no question as to the validity of the will or of the validity and regularity of the order admitting it to probate. The only question is, what did the testator mean by the provisions of the will which he saw fit to make? 2 Page on Wills, Lifetime Edition, Sec 918. The will contained no formal words of gift, bequest, or devise. What did the testator mean by the words which he used? What was his intention with respect to the disposition of his property? Those are the questions with which we are concerned. In order to ascertain the intention of the testator the court should as far as possible place itself in the position of the testator at the time he made and published his will. He prepared and executed the deed before he executed and published the will. In the will he specifically referred to the deed. The testator prepared the deed himself. He wrote every word of the will himself. He placed the will and the deed in an envelope which he addressed to the person named in the will as executrix, and he placed the envelope containing such documents in his dresser drawer in the room which he was occupying and where it was found after his death.
The question as to what disposition the testator intended to make and did make of his property in his will, first arose upon the final decree of distribution. The appellants appealed from that decree to the district court, and specifically demanded a trial anew in the district court, and that "all the issues therein be tried and determined anew in the said court, and said district court hear the allegations and proofs of the parties and determine all questions of law and fact therein." The statute relating to such appeals (NDRC 1943, Sec 30-2623) provides:
"If an appeal from a decree or an order of a county court is taken generally, all the issues must be tried and determined anew in the district court and the court must hear the allegations and proofs of the parties and determine all questions of law and fact arising thereon according to the mode of trying similar issues originating in that court, except that an issue involved in *Page 187 
the probate of a will and issues arising upon a petition for the allowance of a claim or demand for money only must be tried according to the mode of trying issues to a jury if a jury is demanded. Where the appeal is taken from a decree or final order, the court, before trying the issues, may review any intermediate order specified in the notice of appeal which materially affected the issues and may vacate the same or make such order as the county court ought to have made. Upon every appeal taken generally, the court has the same power that the county court had to permit or direct a pleading to be filed, or to amend the issues and try the same accordingly, but if the proofs on which the county court acted were submitted in the form of affidavits or otherwise appear of record, the appeal must be determined upon the certified transcript."
The deed referred to in the will was admissible in evidence upon the trial in the district court notwithstanding it had not been offered or received in evidence in county court.
This brings us to the questions raised with respect to the construction of the will and the distribution of the property made by the final decree of distribution.
It must be borne in mind that we are construing a will. The testator wrote the document for the purpose of disposing of the property, which he might leave at his death, to such persons and for such purposes as he might desire. The testator had no wife or children, and he left surviving him as heirs at law (under the laws relating to descent and distribution) two brothers and eight nieces and nephews. The testator named the two brothers and two nieces and one nephew in the will as those to whom the property left by him at his death should be distributed, and he made no mention of the other niece and nephews. The presumption is that the testator carefully considered what disposition he wanted to make of his property and that in his will he named those to whom he wanted to make testamentary gifts, and designated the property or the amount of moneys to be given to each, and that he intentionally excluded from the will such persons as he did not name in the will. It must also be presumed that he intended to dispose of all of his property by the will and that he did not intend to die intestate as to any part of his property. *Page 188 
"The mere making of a will gives rise to a presumption against intestacy, or that the testator intended to die intestate as to any part of his property, and in the absence of indications in the will to the contrary, the testator is presumed to intend to dispose of his entire estate." Thompson, Construction of Wills, Sec 56, p 87.
The language of the will involved in this case, construed in light of the circumstances surrounding the making of the will, tends to support these presumptions. The making of the will was a solemn and serious matter for the testator. The language of the will indicates that the testator was not highly skilled in the use of the English language yet he took the pains to prepare and to write the will himself. The will indicates that the testator had definite and positive ideas as to who should share in the property which he left at the time of his death, and what share each of such persons should receive. The will clearly indicates that it was his purpose and intention to dispose of all his property by the will and that such property should go to and be distributed among the persons whom he named in the will and that others whom he did not name should not share in his estate at all.
The language of the will leaves no doubt that it was the testator's purpose to make a testamentary disposition of his property. At the outset he said I appoint my niece Christine Chadwick to act as "Executrix for my Estate after I am death, including Real Estate and Personal Property, Money notes and accounts, and I empower my Executrix to collect all outstanding Notes and accounts, which my not been collected before my death, and for her is my Executrix to make distribution of all income from Estate herein mentioned in equal shares to my Heirs named below in this Will". He then refers to the tract of land which he specifically describes and states that for such land "I have prepared a Deed to my nephew one Carl Glavkee of Baldwin Post Office Burleigh County N Dak. Said deed I wish my Executrix to hand to Carl Glavkee after I am death."
He then says, "I also have four Federal Farm Mortgage Corporation Bonds which together amounts to $1600.00 Sixteen hundred Dollars said Bonds I wish my Executrix to hand to my neices *Page 189 
one Evelyn Westling of Woodburn Post Office, State of Oregon." He then states,
"All income from other Estate, except Land and Bonds must be divided in Equal shares to my Heirs named below in this Will."
It will be noted that in the provision relating to the appointment of the executrix the testator specifically includesreal estate as being part of the estate to be administered by the executrix. After having provided for the disposition of the land and the four Federal Farm Mortgage Corporation Bonds, he then provides,
"All income from other Estate, except Land and Bonds must be divided in Equal shares to my Heirs named below in this Will."
This latter provision is in harmony with and recognizes the fact that he had disposed of both the land and the bonds by the prior provisions of the will. It is conceded that the will is valid. We must assume that the testator had testamentary capacity at the time he made the will and that he was under no restraint. The language of the will as a whole construed in the light of the circumstances, leaves no room for doubt that he intended to make a testamentary disposition of his property, and of all his property. It is true the will contains no technical or formal words of gift, bequest, or devise, at all. But this is not of controlling importance. It is clear that the testator was providing for the disposition of such property as he might leave upon his death. He gave a complete legal description of the land. There is no chance of misunderstanding as to the property to which he refers. He states as an existing fact, that he has prepared a deed for this land to his nephew Carl Glavkee, and that it is his wish that the executrix under the will, shall hand such deed to Carl Glavkee after the death of the testator. It clearly was the intention of the testator James Glavkee to give the land to Carl Glavkee. Indeed it is admitted in appellants' brief that such was the intention. In such brief it is said,
"It is vividly apparent from this language that the testator intended that Carl Glavkee should become the owner of this land by virtue of the physical action of Christine Chadwick, which physical action was the delivery by her of the deed." *Page 190 
Appellants' counsel argues that the testator did not say in the will that he is giving or devising the land to Carl Glavkee; that he said that "he has prepared a deed" to Carl Glavkee, and that it is his wish that the executrix "hand this deed to Carl Glavkee"; that the testator "in his will removed the deed from his testamentary disposition by directing his executrix not to hand over the land to the grantee but to hand over to the grantee the conveyance of title to the land"; and that "the fact that the testator might be ignorant of the law that a delivery of the deed during life was required to be made in order to give it validity, cannot change the situation."
It is true the testator did not intend that the deed should be delivered until after his death and the deed was not delivered during the lifetime of the testator, and hence it was not effective as a conveyance. But it is equally true that it was clearly the purpose of the testator to make a testamentary gift of the land to Carl Glavkee. The provisions of the will indicate that the testator contemplated that the land would be part of the property which would come into the hands of the executrix upon his death (NDRC 1943, Sec 30-1301, 1304), and the land was inventoried and appraised as property of the decedent that had come to the knowledge of the executrix. (NDRC 1943, Chap 30-15). It was the purpose of the testator that the testamentary gift to Carl Glavkee should be completed and carried into effect in the course of the proceedings for the probate of the will. He said "for land described here in being SE 1/4 of Section 24-133-87 of Grant County N. Dak. I have prepared a deed to my nephew one Carl Glavkee of Baldwin Post Office Burleigh County, N. Dak. Said Deed I wish my Executrix to hand to Carl Glavkee after I am death." If he had intended that the gift should be made and completed otherwise than in the course of the probate of the will there would have been no reason for referring to the matter in the will at all. While he named Christine Chadwick executrix, he did not say that he wished "Christine Chadwick" to deliver the deed to Glavkee. He said "said deed I wish my `Executrix' to hand to Carl Glavkee after I am death". The direction to deliver the deed was to the executrix and not to Christine Chadwick individually. The testator apparently had *Page 191 
some familiarity with the method of transferring title to land by deed, and he probably believed that the delivery of the deed which he, the owner, had executed and placed with the will would suffice to transfer the title to the land to Carl Glavkee and thus facilitate the completion of the gift. Re Glass, 331 Pa. 561,568; 1 A.2d 239, 242, 117 ALR 1323, 1326. When the testator made his will and therein referred to the deed which he had previously executed and directed that the executrix of such will deliver such deed to Carl Glavkee, it certainly was not his intention to give Carl Glavkee merely a worthless document, or to make a gift of the land on the condition and with the reservation that if the deed, when delivered to Carl Glavkee after the testator's death, was ineffective as a conveyance and did not operate to transfer title to the land to him, that then Carl Glavkee should receive nothing except the worthless deed.
At the time he made and published the will it was clearly his purpose and intention to make a testamentary gift to Carl Glavkee of the land without any conditions whatsoever, and that intention and purpose continued. The will was signed and published by the testator on May 25, 1943. The testator died on or about September 4, 1943. He did not make a codicil or a new will. Apparently he had no desire to make any disposition of his property or any part thereof other than he had made in the will in question here. The fact that the method proposed by the testator to complete the gift to Carl Glavkee would not by itself accomplish the purpose of the testator, did not set at naught the purpose which the testator had so clearly indicated that he had, namely, to make a testamentary gift of the land to Carl Glavkee, — a purpose which he had urged the executrix to have carried out. Certainly the testator did not intend that his purpose to make the gift should be carried out only if the deed were valid, and that if the deed were invalid that then Carl Glavkee should receive nothing except a worthless piece of paper. The delivery of the deed was not the end, but the means to an end. The end sought — the object aimed at — by the testator was to give the land to Carl Glavkee upon the death of the testator and to make Glavkee the owner of the land, and he sought to utilize the deed to accomplish *Page 192 
this. The accomplishment of such purpose was the all-important thing, and the means by which the testator's purpose might be accomplished were unimportant. 41 Mich L Rev p 752. To say that the testator intended to give to Carl Glavkee merely the paper, — "the deed" —, and not the land described therein, and that unless the paper would operate to convey the land to Glavkee, he should receive — nothing except the piece of paper, would attribute to the testator an intention he never had, and would frustrate and defeat his real purpose and intent. The great question is, did the testator by what he said in the will, clearly indicate that it was his purpose and intention that Carl Glavkee should have the land? 37 Ill L Rev p 428. That question must be answered in the affirmative. Certain it is, that it was not the purpose of the testator to perpetrate a prank or practical joke by having the executrix deliver to Carl Glavkee a worthless piece of paper in the form of a deed. The purpose of the testator was to make a gift of the land to Glavkee, to take effect upon the testator's death, and that such gift should be made in the course of the proceedings for the probate of the will. The will should be construed so as to carry out such fundamental purpose and intention of the testator.
It is next contended that it was error to award the four Federal Farm Mortgage Corporation Bonds to Evelyn Westling. The will provided,
"I also have four Federal Farm Mortgage Corporation Bonds which together amounts to $1600.00 Sixteen hundred Dollars said Bonds I wish my Executrix to hand to my neices one Evelyn Westling of Woodburn Post Office, State of Oregon."
Appellants' counsel contend that the will does not indicate that the testator intended that Evelyn Westling should take title to the bonds through probate proceedings; that the language of the will negatives the existence of a testamentary intention, and that the testator intended that Evelyn Westling should secure title to the bonds by the executrix handing them over to her.
In our opinion the contentions and arguments thus advanced are not valid. What we have said above with respect to the deed is also applicable here. The will expresses the intention that the provisions for the disposition of the testator's property *Page 193 
shall take effect upon his death. The provision quoted above clearly evidences an intention on the part of the testator to make a testamentary gift to Evelyn Westling of the four Federal Farm Mortgage Corporation Bonds.
"A written direction to the executor to hand over certain property to a designated person is sufficiently certain to operate as a will." 1 Page on Wills, Lifetime Edition, pp 130-131.
Zell's Estate, 329 Pa. 312, 198 A. 76; Glass's Estate, 331 Pa. 561,117 ALR 1322, 1 A.2d 239.
It is next contended that it was error to distribute the remainder of the assets of the estate and award them in equal shares to Christine Chadwick, Christ Glavkee, Carl Glavkee and John H. Hanson. It is asserted by appellants that the will provided merely for the distribution of the income of the estate and did not provide for the distribution of the fund or properties from which the income was derived.
The contention is without merit. Here there is an absolute gift of the income from all the estate, except the land and the four Federal Farm Mortgage Corporation Bonds, without limitation of time or amount. In the absence of provisions in the will to the contrary, this constitutes a bequest of the fund and properties from which the income was derived. 57 Am Jur, Wills, p 786, Sec 1196; Re Carmany, 357 Pa. 296, 53 A.2d 731, 174 ALR 311, and authorities collated in note commencing at p 319.
"It is a well established general rule that a gift of the income or interest of a fund without limitation as to time is, where no other distribution is made thereof, a gift of the principal. The reason is that where one has an unlimited right to the income there is no room for a right of property in anyone else." 57 Am Jur, Wills, p 786, Sec 1196.
The judgment appealed from is correct. It is affirmed.
NUESSLE and BURKE, JJ., and GRIMSON, Dist. J., concur.
BURR and MORRIS, JJ., did not participate. *Page 194