## Lohr Estate

*Edward B. Bulleit* and *Louis T. Guthrie*, for petitioner.

*J. Francis Yake, Jr.*, for executor.

*Ronald J. Hagarman*, for heirs.

*Oscar F. Spicer*, for Commonwealth and for guardian ad litem.

SHEELY, P. J., November 28, 1964. — The question before the court at this time is whether the decree of probate of the will of Eva Lohr, deceased, should be opened to permit an additional sheet of paper to be offered for probate. This depends upon whether the proponent of the additional sheet of paper has established, prima facie, that the paper is testamentary and was signed by the testatrix at the time of, or after, executing the probated will, and was intended by her to be a part thereof or a codicil thereto: Lohr Estate, 5 Adams 192 (1964). The additional sheet of paper was undated.

From the pleadings and the testimony taken before the court we find that Mrs. Lohr's husband died in

May 1953. After her husband's death she lived alone in her home until she suffered a stroke on or about December 7, 1962. Thereafter she lived with her brother, Raymond Geisler, and was in the Hanover Hospital and several convalescent homes until the time of her death on January 12, 1963. During this period she did not return to her home at any time. She was survived by brothers and sisters, nieces and nephews, but no children.

On December 13, 1962, Mrs. Lohr requested Mr. Geisler to get her deeds and papers, including her will, from a drawer in a buffet in her home and to put them in his safe for safekeeping. On December 16, 1962, Mr. Geisler went to her home and in a search of the drawers of two buffets he found one containing a quantity of papers including old recipes, medical remedies, receipts for paid bills for the past 25 years, etc. He also found therein a blank tablet with perhaps a dozen papers between the pages of the tablet. In one section of the tablet there was an unsealed envelope with the words "My Will" written thereon in Mrs. Lohr's handwriting. Inside the envelope, but not attached or folded together, were two sheets of paper: the will which has been probated and the paper, exhibit 1, now offered for probate. Outside the envelope, but between the same pages of the tablet, was the third paper, exhibit 2.

Mr. Geisler kept all the papers in his safe, without examining them, until the day of the funeral. Before the funeral he gave the envelope containing the probated will and the paper, exhibit 1, to the wife of the funeral director, Mrs. Dorothy Feiser. Mrs. Feiser sealed the envelope and after the funeral opened it and read the probated will and exhibit 1 to the members of the family. All of the papers, including the third paper, exhibit 2, were then delivered to J. Francis Yake, Jr., Esquire, who arranged for the probate of the original

will and the grant of letters testamentary to Raymond Geisler. Mr. Yake kept the envelope and exhibits 1 and 2 in his office file, notifying all parties of the contents thereof. Certain pinpoint perforations appearing thereon were made by him in fastening the papers to the file.

All papers are admittedly in the handwriting of Mrs. Lohr in pencil. The probated will is headed "My Will Feb. 2, 1957" and covers the entire front side and half of the reverse side of one sheet of paper and is signed at the bottom to the left of center "Eva Lohr." Above her signature, in ink and a different handwriting, appear the words "Witness: Ruth W. Sachs, Witness: John H. Sachs." John H. Sachs is now deceased and Ruth W. Sachs is residing in Wilmington, Delaware, and was not called as a witness:

The probated will provided:

"My Will Feb 2 1957
"After my death make sale and
dispose of everything and
each get the amount after
all expenses are paid
Charlie —        $1000. Dollars
Earl                1000.    ”
Myrna              1000.    ”
Paul $1000. put in the bank
to help buried him.
New Oxford Fire Company    $200
St. Luke Church.    $1000. put
                            in trust fund
Loysville Orphan home    $500
Raymond, Blanch, Chas Earl    $300
                            Ginter each
Cleason Stoner    $500.
Doris Pressel $50.00 to bring
out my Grocers
Raymond to Settled up and

get $2000. If he looked
after me and took care of
me
$500. put in the bank for
to buy flowers to put on
our graves and on Mother &
fathers grave. Raymond to
look after it and take care of it."
Witness: —
Ruth S. Sachs
Witness
John M. Sachs
Eva Lohr"

The will contained no residuary clause.

Exhibit 1, the paper now sought to be probated, covered about one-third of one side of a sheet of paper and is signed at the bottom, to the left of center, "Eva Lohr." It contained no heading or date and provided: "Elmer Krenzer to get George shaving Mug. Raymond to get George & my pictures. and what left to go to Hanover Hospital."

The third paper, exhibit 2, which was not in the envelope, covers the entire front side and half of the reverse side of one sheet of paper and is signed at the lower left hand corner "Eva." Immediately above her signature are the words "This is not the one" in her handwriting. It is headed: "My will May 4, 1956", and reads very much like the probated will except as to the amounts given to various beneficiaries. It also provided that Raymond was to settle up "and get the farm if I die before any changes get make and take care of me and buried me nice." No pecuniary bequest is made to Raymond.

It is beyond question that the will dated May 4, 1956, was revoked, if not by the notation that it was not the one then by the later will dated February 2,

1957: Turner Estate, 408 Pa. 530, 538 (1962). Because the stroke of the five ran into the top of the figure six it was suggested that the date was 1957, but a careful look at the figure indicates that the correct date is 1956. It is noted that decedent did not intend this will to be her final will since she provided that Raymond was to get the farm "if I die before any changes get make." In the will of February 2, 1957, which was probated, she changed the amounts to be given to various beneficiaries and provided that Raymond was to "settled up and get $2000." No reference is made to the farm and it is clear that she substituted the gift of $2,000 in the probated will of 1957 for the gift of the farm in the 1956 will.

We believe that exhibit 1 is testamentary in character. It provides that certain persons were "to get" certain specific items of personal property and that what was left was to go to the Hanover Hospital. This is the type of language ordinarily used by laymen to indicate the disposition they desire of their property after their death. "A writing need not assume any particular form or be couched in language technically appropriate to its testamentary character to take effect as a will or codicil. If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be:" Hengen's Estate 337 Pa. 547, 549 (1940). Exhibit 1 is in writing and is signed by decedent at the end thereof and cannot be construed otherwise than as a legal declaration of decedent's intention which she willed to be performed after her death. It is significant that she placed the paper in the envelope marked "My Will" along with the probated will where it was certain to be found, and that she not only made a notation on Exhibit 2 that "this is not the one" but also retained

exhibit 2 outside the envelope. These circumstances would give rise to the inference that she regarded exhibit 1 as a "live" document subsequent to the date of her will: Glass' Estate, 331 Pa. 561 (1938) ; Tozer vs. Jackson, 164 Pa. 373 (1894).

The Hengen case is also authority for the proposition that exhibit 1 is entitled to probate as a codicil to the probated will even though it was undated. In that case the undated paper offered for probate as a codicil was found in a drawer, together with decedent's will and her other important papers, pinned to the active page of a savings account passbook evidencing one of the principle assets of her estate. It was shown that almost a year and a half after the date of the will, when the last interest entry was made in testatrix's passbook, the writing was not pinned therein.

There was no such testimony in the present case, of course, but the fact that the probated will was witnessed and exhibit 1, found in the same envelope as the probated will, was not witnessed would tend to indicate that exhibit 1 was executed after the probated will. Otherwise, it is reasonable to suppose that both papers would have been witnessed at the same time. In this connection, it is noted that there would have been sufficient space in the probated will for the inclusion of the contents of exhibit 1 between the end of the writing and the signature had it not been for the signatures of the witnesses in that space.

Neither the probated will nor exhibit 2, the will of May 4, 1956, contained a residuary clause. Decedent indicated in exhibit 2 that that would not be her final will since she provided therein that Raymond was to get the farm if she died before any changes were made. The changes were made by the probated will and it, together with exhibit 1, make a complete disposition of decedent's estate.

We attach no significance to the fact that the en-

velope containing the will and exhibit 1 was not sealed, or to the fact that the two papers were not attached to each other. In Covington Estate, 348 Pa. 1 (1943), the fact that three papers were enclosed in a sealed envelope was regarded as equivalent to a physical fastening thereof. The question presented there, however, was whether the three papers, only one of which contained the signature of decedent, were collectively to be considered as his will and whether the will was signed at the end thereof. As to this problem, the general rule, where the sheets of paper are not physically fastened together, was stated in Wikoff's Appeal, 15 Pa. 281, 290 (1850) : "It is a rudimental principle, that a will may be made on distinct papers, as was held in the Earl of Essex's case, cited 1 Show. 69. It is sufficient that they are connected by their internal sense, by coherence or adaptation of parts." In the present case both sheets of paper were signed by the decedent, but even applying the rule in Wikoff's Appeal, the two papers are connected by their internal sense by coherence and by adaptation of their parts. Together they make a complete disposition of the decedent's property.

The respondents offered testimony tending to show that Mrs. Lohr was antagonistic to hospitals generally and particularly to the Hanover Hospital where her husband had died. This was for the purpose of showing lack of testamentary intent, the respondents contending that it was unlikely that she would leave the residue of her estate to the hospital under these circumstances. However, we must determine her intent from what she wrote, not what she might have written. If she did not intend to make a bequest to the hospital the question remains as to what she did intend by exhibit 1.

As we construe the testimony on this point Mrs. Lohr stated several times when she was sick that she

did not want to go to any hospital and that her neighbor was not to let them take her to the hospital. She was in the hospital in 1958 and when she returned she said she would never go back unless she did not know what she was saying. She always resisted the idea of being taken to the hospital.

We do not construe this testimony as being important. It may readily be construed to mean that she preferred to be at her own home if she were sick rather than in an institution. But there is nothing in her various statements to indicate any particular animosity toward the Hanover Hospital, other than perhaps she was unhappy about the bill for her husband's care.

We conclude that the proponents have established a prima facie case for the probate of exhibit 1 as a codicil to the will dated February 2, 1957.

And now, November 28, 1964, the Register of Wills of Adams County is directed to open the probate of the will of Eva Lohr, deceased, dated February 2, 1957, to permit exhibit 1 to be offered for probate as a codicil thereto.