CHRISTIAN LINCK

*v.*

THE CITY OF LITCHFIELD.

*Filed at Springfield May 11, 1892.*

1. MUNICIPAL CORPORATIONS—*constitutionality of the act allowing city councils to adopt article 9 of the act for the incorporation of cities and villages.* Section 54 of article 9 of the general law for the incorporation of cities and villages, which authorizes the city councils of cities not incorporated under the general law to adopt said article 9 without a vote of the city, since its long use unchallenged, and its repeated recognition by the courts as a valid law, even if doubtful as an original question, is not now open to the contention that it is unconstitutional.

2. AFFIDAVITS—*oaths administered by the attorney of the affiant—practice discountenanced.* The practice by attorneys in legal proceedings, of administering oaths and taking affidavits to be used in such proceedings, is generally discountenanced by the courts. But the proceeding can not be treated as a nullity, and if the other party takes no steps to set aside the proceeding in apt time, the irregularity will be waived.

3. SAME—*irregularity waived.* Where commissioners appointed by the county court to levy a special tax were sworn before a notary public, who was also the city attorney having charge of the proceeding, it

was held that the oath was not void, and that if no motion was made in the county court to set the same aside in proper time, the irregularity in administering the oaths was waived, and an objection could not be made to the proceeding on that ground.

4. SIMILARITY OF NAMES—*presumption of identity of persons—not allowed to overcome the presumption of validity of a judgment.* In a proceeding by a city to levy a special tax for a local improvement, the original petition filed in the county court was signed, "Joseph E. Paden, City Attorney," and the oath of the commissioners appointed to make the levy had appended to it the name of "J. E. Paden, Notary Public." On appeal, it was contended that the names were that of the same person: *Held,* that for some purposes the similarity of names thus shown would be sufficient to establish an identity of persons, but when such identity was sought to be shown on appeal, for the purpose of reversing the judgment of the county court in a case where all presumptions are in favor of the judgment, a much stricter rule must apply. In such case the presumption of identity must yield to the presumption in favor of the validity and regularity of the judgment.

5. PRESUMPTION—*of continuance in office.* Ordinarily, when a fact or relation is once shown to exist, it will be presumed to continue; but it is doubtful whether such presumption will prevail when applied to an annual office, like that of a city attorney.

6. SPECIAL TAXATION — *affidavit of mailing notice of levy of special tax—its essentials.* An affidavit of one of the commissioners appointed to levy a special tax, of the mailing of notice "properly directed and lawfully stamped, as required by law, to the owners whose premises have been assessed and whose names and places of residence are known," etc., is sufficient under the statute, which does not require it to set forth the names of the parties to whom the notice is sent. Such affidavit is sufficient if it contains all that the statute requires.

7. CONSTRUCTION—*when figures construed to express dollars.* Commissioners who made an assessment roll in a proceeding by special taxation were ordered to assess upon the property abutting upon the portion of the street to be improved, according to frontage, the cost of the improvement, including the cost of making and collecting the same, the entire estimate being $3484.80. This amount was by the ordinance ordered to be divided into five equal installments, of which the first was to be payable upon confirmation of the special tax and the others annually thereafter. The commissioners, in their return of the roll, certified thereon that they had thereby assessed the cost of the improvement upon the abutting property according to its frontage, and in adding up the last column of figures on the roll, the footing is 3484.80,—the exact amount in dollars and cents of the estimated cost,—and the other column footed up one-fifth of that sum,—the amount of the first installment: *Held,* that this was sufficient to show that the

figures on the roll were intended to express in dollars and cents the amount of the special tax upon the several tracts of land.

8. The uncertainty and ambiguity in an assessment roll of special taxes, arising from the want of anything to indicate what the figures represent, will be cured when dollars and cents are indicated in the delinquent list and in the judgment of the county court against the lands and lots. In such case it will be presumed that the county court, on the application, was enabled, from some legitimate source of information, to determine the meaning of the figures appearing in the assessment roll, and that they indicated dollars and cents.

9. JUDICIAL NOTICE—*of the location of a city.* Where real property is shown to be located in a city, the court will take judicial notice of the county in which the same is situated.

WRIT OF ERROR to the County Court of Montgomery county; the Hon. LOUIS ALLEN, Judge, presiding.

Messrs. LANE & COOPER, for the plaintiff in error:

The city council had no power to adopt article 9 of the general Incorporation law by ordinance. The legislature had no power to authorize the city council to adopt a charter, or any part of a charter, for the people of the city.

That the legislature can not delegate to the city council the power to adopt a charter for a city in this State, under our constitution, we submit the following authorities.: *Parker* v. *Commonwealth,* 6 Pa. St. 507; *Rice* v. *Foster,* 4 Harr. 479, and cases therein cited.

In the case of *West Philadelphia,* 5 W. & S. 283, the court say: "Under a well balanced constitution the legislature can no more delegate its proper functions than can the judiciary." See, also, *Barto* v. *Himrod,* 8 N. S. 483; *Geebrick* v. *State,* 5 Iowa, 491; *Railroad Co.* v. *Clinton,* 1 Ohio, 84; *Railway Co.* v. *Memphis,* 10 Wall. 50; *Chase* v. *Miller,* 41 Pa. St. 422.

An affidavit can not be taken before an attorney in the cause. *Taylor* v. *Hatch,* 12 Johns. 340; *Tootle* v. *Smith,* 34 Kan. 27.

An attorney of record can not take the affidavit of his client for an attachment or replevin suit. Tidd's Pr. 494.

The affidavit of the mailing of the notice was insufficient. The names of the persons to whom mailed should have been given. Again, the affidavit does not state that a notice was sent to each person. Compliance with the law in this class of cases is required. *Walters* v. *Lake,* 129 Ill. 23.

The assessment roll does not state where the property is located, giving neither county nor State, and does not state where Litchfield is located. Nor does it show the amount of the assessment. The column of figures on the right hand side are meaningless, there being no character used to designate dollars or cents, and one is left entirely to conjecture to know what these figures mean. *Chicago* v. *Wright,* 32 Ill. 197; *Railroad Co.* v. *Chicago,* 53 id. 82.

Mr. BENJ. McWILLIAMS, and Mr. ROBERT McWILLIAMS, for the defendant in error:

The legislature may vest the corporate authorities of cities with power to make improvements by special assessments. *Bloomington* v. *Miller,* 84 Ill. 621; *Lake* v. *Decatur,* 91 id. 596; *White* v. *People,* 94 id. 617.

The rights of a city under a special charter to acquire these powers by ordinance was passed on in *Murphy* v. *Peoria,* 119 Ill. 509, and *Murphy* v. *People,* 120 id. 236.

Courts will not declare a statute void for unconstitutionality, unless it is so beyond a reasonable doubt. Cooley's Const. Lim. 182; *Lane* v. *Dorman,* 3 Scam. 238; *People* v. *Marshal,* 1 Gilm. 672; *People* v. *Auditor,* 30 id. 434; *People* v. *Saloman,* 51 Ill. 38.

The commissioners are *quasi* public officers, and while it may be bad practice for a person to execute an affidavit for replevin or attachment before his attorney of record as notary, this construction certainly would not extend to the oath of commissioners in entering upon their duties.

It does not appear that Joseph E. Paden, whose name is attached to the petition filed April 7, 1890, as attorney for

appellee, and who is named as attorney for appellee in the order appointing the commissioners, April 7, 1890, is the same person as the J. E. Paden, notary public, before whom the commissioners subscribed their oath, April 17, 1890, when entering upon their duties. Nor does it appear that Joseph E. Paden was the attorney of the appellee April 17, 1890, or, in fact, at any time after April 7, 1890, nor that J. E. Paden was at any time the attorney of appellee.

The authorities cited by appellant on this proposition are also cited in the same order of succession in 1 Am. and Eng. Ency. of Law, p. 309, note 3, under affidavit. In the same note, on page 310, it is stated: "The other party should at once move to set the proceedings aside for irregularity, as it is too late to do so after judgment. (*Gilmore* v. *Hempstead*, 4 How. 152.) The attorney must be such when he took the affidavit. (*Vary* v. *Godfrey*, 6 Cow. 587.) It is insufficient to show merely that he is such when objection is taken. (*Kidde* v. *Davis*, 5 Dowl. Pr. 568.) The rule does not apply to proceedings to admeasure dower, (*Griffin* v. *Borst*, 4 Wend. 195,) nor to an affidavit to hold to bail. (*Adams* v. *Mills*, 3 How. 219.)" And in note 1, page 310: "The rule as to a party's attorney is not held to in California, (*Revis* v. *Cowell*, 56 Cal. 588,) Minnesota, (*Young* v. *Young*, 18 Minn. 90,) or in Wisconsin. (*Dawes* v. *Glasgow*, 1 Burn, 8; 1 Pin. 171.)"

The affidavit of the mailing of the notice was sufficient. Rev. Stat. chap. 24, art. 9, sec. 28; *Ottawa* v. *Macy*, 20 Ill. 414; *Brown* v. *Chicago*, 117 id. 21; *Falch* v. *People*, 8 Bradw. 351.

The amendment introduced into the 191st section of the present Revenue law has produced a radical change in proceedings to recover judgment for delinquent taxes, and has overruled or modified most, if not all, of our previous decisions on the questions thus arising. *Chiniquy* v. *People*, 78 Ill. 577.

The omission of a dollar mark at the head of the column of valuations in an assessment roll has been held immaterial in *Hill* v. *Figley,* 25 Ill. 156; and that the want of a word or character to the numerals, to indicate the amount of taxes due, does not vitiate the assessment, and is no defect to anything prior to the application of the collector for a judgment against delinquent lands, is held and authorities reviewed in *Elston* v. *Kennicott,* 46 Ill. 189.

A judgment confirming special assessments is conclusive on the land owner as to all objections and defenses that might have been interposed. *Lehmer* v. *People,* 80 Ill. 601; *People* v. *Brislin,* id. 427; *Railway Co.* v. *People,* 120 id. 105; *Blake* v. *People,* 109 id. 504; *Schertz* v. *People,* 105 id. 27.

Mr. Justice Bailey delivered the opinion of the Court:

The writ of error in this case brings up for review the proceedings of the County Court of Montgomery county, in relation to the assessment and collection of a special tax for a local improvement, consisting of grading, paving and otherwise improving a portion of Ryder street in the city of Litchfield. It appears that, at the April term, 1890, of said court, said city filed its petition, representing, in substance, that the petitioner was a municipal corporation existing under a special charter granted by the Legislature; that on the 10th day of July, 1884, the city council of said city passed an ordinance adopting article 9 of the general law in relation to the incorporation of cities and villages; that on the 28th day of February, 1890, said city council passed an ordinance providing for making said local improvement, and also providing that the cost thereof, not including street and alley intersections, be paid by special taxation on the lots, parts of lots, and parcels of land abutting upon the part of said street to be improved, in proportion to the frontage thereof.

Certified copies of said ordinances were appended to said petition as exhibits. By the last named ordinance, three per-

sons were appointed a committee to estimate separately the cost of that part of said improvement to be paid by special taxation, and the cost of the street and alley intersections, and required the city attorney, on the filing of the report of said committee and the approval thereof by the city council, to file the proper petition in said County Court for proceedings to assess that portion of the cost of said improvement required to be raised by special taxation, according to the provisions of the statute in such case made and provided. Said ordinance also provided that said special tax should be divided into five equal installments, of which the first should be payable upon the confirmation of said special tax, and the other four installments yearly thereafter, with interest.

The petition further alleged that, on the 10th day of March, 1890, said committee reported its estimate of the cost of that portion of said improvement to be raised by special taxation at $3379.20, and of the cost of levying and collecting said assessment at $105.60, and that on the same day, said report was duly approved by said city council. The petition prayed that the cost of said improvement might be assessed in the manner provided by law.

On the hearing of said petition, said court found the facts as therein alleged, and appointed three commissioners to levy said special tax in the manner prescribed by the ordinance. Said commissioners thereupon took, subscribed and filed their official oath, said oath being taken April 17, 1890, before J. E. Paden, a notary public. On the 20th day of said month they filed in said court their assessment roll, and at the May term, 1890, of said court, proof of notice of the filing of said assessment roll, and that the hearing of objections thereto would be heard at said term, was filed. Said proof consisted of the certificate of the publishers of a daily newspaper printed and published at Litchfield, of the publication of such notice for the time and in the manner prescribed by law, and the affidavit of one of said commissioners, showing the posting

up of notices in certain public places in Litchfield, and also
stating that he, said commissioner, "on the 29th day of April,
1890, sent by the United States mail, properly directed and
lawfully stamped, notices as required by law, to the owners
whose premises have been assessed, and whose names and
places of residence are known to the commissioners, of the
amount of the assessment upon their respective premises for
said improvement, and stating the fact, in said notice, that
the assessment roll would be returned to the May term, A. D.
1890, of the Montgomery County Court, as required by law;
that said notices were enclosed in envolopes, properly directed
and deposited in the post office at the city of Litchfield, Mont-
gomery county, Illinois."

At said May term of said County Court the special tax roll
returned by said commissioners came on to be heard on the
application and motion of said city of Litchfield for the con-
firmation of said special tax, and none of the owners of the
premises on which said special tax was levied appearing or
making objection, it was ordered that said special tax roll be
and the same was in all respects confirmed, and judgment by
default was entered against the lots, blocks, tracts and parcels
of land severally and respectively as set forth in said special
tax roll, for the full amount thereon charged against each of
said lots, blocks, tracts and parcels of land, and the clerk of
said court was ordered to certify said special tax roll, together
with said judgment, to the officers of said city authorized to
collect said special tax.

The collector of special taxes afterwards returned as delin-
quent certain lots and parts of lots taxed in the name of Chris-
tian Linck, and on application to said County Court, at its
May term, 1891, for judgment against said lots and parts of
lots for said special tax and costs, etc., judgment was ren-
dered against each of said lots and parts of lots for the amount
of said special tax, interest, costs, etc., then due thereon, and
said lots and parts of lots, or so much of each as should be

sufficient to pay the amounts of said judgments were ordered to be sold, in the manner prescribed by law. To obtain a review and reversal of said proceedings in said County Court, said Christian Linck has brought the record thereof to this court by writ of error, and assigned various errors, which will now be considered.

The first error assigned calls in question the validity of the ordinance by which the city council of the city of Litchfield adopted article 9, of the general statute in relation to the incorporation of cities and villages. It is not claimed that said ordinance was not in strict conformity with the provisions of section 54 of said article, the contention being that said section is itself unconstitutional, in that it authorizes the city council to adopt said article without a vote of the people of the city.

Said section 54, and the statute of which it forms a part, have now been in force almost twenty years, and during that period, most of the cities and villages in the State have adopted said article 9, by passing ordinances to that effect, as provided by said section 54. The validity of such adoption has been uniformly conceded and acted upon, and it has been recognized by this court, either directly or incidentally, in numerous decisions. If then the question were originally a doubtful one, a thing which we are by no means prepared to concede, it has now become so thoroughly settled adversely to the present contention, that it is no longer open to discussion.

In *People* v. *Pierce*, 90 Ill. 85, it appeared that the city of Chicago had adopted said article 9 by ordinance, and it was held, in substance, that said article thereby became a part of the charter of said city. In *Martin* v. *The People*, 87 Ill. 524, it appeared that said article had been in like manner adopted by the trustees of the town of Lake, and it was held that said article thereby became applicable to said town. Similar recognitions of the validity of ordinances adopted in pursuance of the provisions of said section 54 may be found in the fol-

lowing cases: *Shreve* v. *Town of Cicero,* 129 Ill. 226; *Guild* v. *City of Chicago,* 82 id. 472; *Murphy* v. *The People,* 120 id. 234; *Murphy* v. *City of Peoria,* 119 id. 509. In *Town of Lake* v. *Hequembrough,* 6 Bissell, 325, the question raised here was directly presented and decided, and it was there held that said article might be effectually adopted in the mode prescribed by said section 54, and that a vote of the people of the municipality was not necessary. The foregoing are only a part of the many cases in which the validity of the adoption of said article 9 by ordinance has been recognized, and in view of the uniform course of decision on the subject, we do not deem the point now raised as entitled to further consideration.

The next point made is, that the proceedings are invalid because the commissioners appointed to levy said special tax were sworn before a notary public, who was also the city attorney having charge of said proceedings. The practice by attorneys in legal proceedings of administering oaths and taking affidavits to be used in such proceedings has been generally discountenanced by the courts. In England it has been held that the court will discharge, with costs, a rule obtained on an affidavit taken before the party's attorney. *Hopkinson* v. *Buckley,* 8 Taunt. 74; Tidd's Prac. 404. The same rule seems to have been adoped in New York. *Taylor* v. *Hatch,* 12 Johns. 340; *Gilmore* v. *Hempstead,* 4 How. Prac. 153, and authorities cited. It has also been adopted in Kansas by statute. *Warner* v. *Warner,* 11 Kansas, 121; *Tootle* v. *Smith,* 34 id. 27. See also, 1 Am. & Eng. Ency. of Law, 309, note 3. But as held in *Gilmore* v. *Hempstead, supra,* the other party should at once move to set aside the proceeding for irregularity; that the proceeding can not be treated as a nullity, and that the failure of the opposite party to take advantage of it in apt time will operate as a waiver of the irregularity.

In this case, the irregularity, if it was such, was not challenged in the County Court, and is objected to for the first time in this court. We are inclined to the opinion that, as

the oath was not void, it is too late to raise the objection for the first time here, and that for that reason, it must be over-ruled.

But it is not clearly shown that the notary public, at the time the oath was administered to the commissioners, was the city attorney having charge of the proceedings. The only evidence on the subject appearing in the record consists of the fact that the original petition, which was filed in the County Court April 7, 1890, appears to be signed by "Joseph E. Paden, City Attorney," and that the commissioners' oath, which appears to have been taken April 17, 1890, has appended to it the name of "J. E. Paden, Notary Public." There is nothing in the record, beyond the similarity of names, tending to show that Joseph E. Paden and J. E. Paden were the same person, nor is it shown that Joseph E. Paden had any connection with the proceeding as city attorney after the filing of the petition. It may be that for some purposes, the similarity of names thus shown would be sufficient to establish an identity of persons, but where such identity is sought to be established on appeal, for the purpose of reversing the judgment of a court of competent jurisdiction, and where the presumptions are all in favor of the validity and regularity of the judgment, a much stricter rule must be applied. It is also true that ordinarily a fact or relation once shown to exist will be presumed to continue, but it is doubtful whether such presumption would prevail when applied to an office, like that of city attorney, which is limited in its duration, and which usually expires at about the time of the year or date at which the petition was filed. Under the circumstances, we are unable to say from the record that the officer who administered said oath to the commissioners was, at the time he administered it, the attorney for the city in charge of said proceedings, and for that reason also the objection must fail.

Again, it is objected that the affidavit of one of the commissioners of the mailing of notice to the owners of the several

premises assessed was defective, because it merely stated that
said commissioners, at the date named, sent by mail, "prop-
erly directed and lawfully stamped, notice as required by law,
to the owners whose premises have been assessed, and whose
names and places of residence are known," etc., it being in-
sisted that the names of the persons to whom the notice was
sent should have been given.    The statute under which said
proof of service of notice was made, requires that, before the
final hearing, an affidavit of one or more of the commissioners
shall be filed, "stating that they have sent or caused to be sent
by mail, to the owners whose premises have been assessed,
and whose name and place of residence are known to them,
the notice," etc.    1 Starr & Curtis' Stat. 497.    It will be no-
ticed that the statute determines what the affidavit shall state.
It does not require it to set forth the names of the parties to
whom the notice is sent, but merely to make the general state-
ment that it has been sent by mail to the owners whose prem-
ises have been assessed, whose names and residences are
known, etc.    The generality of the statement is justified by
the simple fact that the statute requires it.    The affidavit
filed in this case, at least so far as the objection pointed out
is concerned, seems to have contained the very statement pro-
vided for, and it must therefore be held to have been sufficient.

    The point is made that the property taxed is not sufficiently
described in the assessment roll returned by the commission-
ers, it being claimed that said roll fails to show the county
and State in which said property is situate, or its particular
location in the city of Litchfield.    The latter part of this ob-
jection is plainly untenable, as the description of said prop-
erty in said assessment roll shows, with sufficient certainty,
its location in the city of Litchfield.    It being sufficiently
described as being in said city, we think resort may be had,
for all the purposes of this proceeding, to the judicial knowl-
edge which the court has of the local divisions of the county
into cities, etc., and the relative positions of such subdivisions.

1 Greenl. on Ev. sec. 6.    The court judicially knows that the city of Litchfield is in the county of Montgomery.

Another objection, and one involving perhaps a little more doubt and difficulty than the preceding, is, that the assessment roll is invalid by reason of uncertainty, there being no dollar mark or other character or word appearing on the roll, indicating the meaning of the figures set opposite the description of the several lots and parcels of land assessed.    On the face of said assessment roll there appear, opposite said descriptions, two columns of figures, the first having written over it the word "Proportion," and the second the word "Total," the figures in the first column being just one-fifth of those appearing in the second.    In neither of these columns is there any dollar mark or other character or word, beside the heading and the figures themselves, indicating the meaning of said figures.

It appears however that in the delinquent list in which the property of the plaintiff in error was returned delinquent for non-payment of said special tax, the same figures appearing in the first column of the assessment roll opposite the property of the plaintiff in error, appear in a column headed, "Dolls. Cts.," and that in the judgment which was afterwards rendered for the sale of said property for said special tax, the same figures appear in a column headed in the same manner.    It thus appears that the uncertainty and ambiguity in the assessment roll complained of does not exist in the delinquent list or in the final judgment, and it must be presumed that the County Court, when application was made for judgment, was enabled to determine, from some legitimate source of information, the meaning of the figures appearing upon the assessment roll, so as to determine that they were employed by way of indicating dollars and cents.    We are inclined to the opinion that said judgment must be regarded as final and conclusive as to the meaning of said figures, and that the ambiguity must be deemed to have been thus cured.

31—141 ILL.

But we are not without information, apart from the judgment, as to what said figures were intended to represent. The commissioners who made the assessment roll, were ordered to assess upon the property abutting upon the portion of the street to be improved, according to frontage, the cost of the improvement, including the cost of making and collecting the same, the estimate of the entire cost, as made by the committee appointed for that purpose being $3484.80. This amount, by the terms of the ordinance, was ordered to be divided into five equal installments, of which the first was to be payable upon the confirmation of the special tax, and the others annually thereafter. The commissioners, in returning said assessment roll, certified thereon, in substance, that they had thereby assessed the cost of said improvement upon the abutting property according to its frontage, and in adding up the last column of figures appearing on the roll, the footing is 3484.80, the exact amount in dollars and cents of the estimated cost of the improvement, and the other column foots up just one-fifth of that sum, the amount of the first installment. It would require a mind more than ordinarily skeptical to doubt that the figures appearing on the assessment roll were intended to express, in dollars and cents, the amount of the special tax imposed upon the several tracts or parcels of land therein described.

Other objections are urged, which have been considered, but which need be no further noticed than by saying that we do not think them tenable. After careful consideration of the various points presented on behalf of the plaintiff in error, we are of the opinion that none of them show errors for which the judgment of the County Court should be reversed. It will therefore be affirmed.

*Judgment affirmed.*