Julius BENDER, Petitioner and
Respondent,

v.

Emil BENDER, Mathilda Olson, Ella Bender, Helmina Berger, Edwin Bender, Amelia Bender, and Harold Bender, Respondents,

and

Annette Blumhagen and Albert Bender,
Respondents and Appellants.

No. 7534.

Supreme Court of North Dakota.

Sept. 23, 1955.

Fred E. Saefke, Jr., Bismarck, for appellants.

John E. Williams, Washburn, for respondents.

MORRIS, Judge.

This action involves the contest of the will of Caroline Bender, deceased. The will was admitted to probate in the County Court of McLean County on December 16, 1953. The contestants, Albert Bender and Annette Blumhagen, appealed to the district court of that county where the matter was tried before a jury who returned a verdict in favor of the contestants, finding that the purported will was not the legal will of Caroline Bender.

At the close of the testimony the proponent of the will moved for a directed verdict. The granting of that motion was resisted and the motion was denied pursuant to the provisions of Section 28-1509, NDRC 1953 Supp. After rendition of the verdict the proponent moved for judgment notwithstanding the verdict or in the alternative for a new trial. The motion for judgment notwithstanding the verdict was granted and judgment entered setting aside the verdict of the jury and dismissing the appeal of the contestants from the order of the county court admitting the will to probate. From this judgment the contestants now appeal to this court.

For many years John Bender, with his wife, Caroline Bender, owned, operated, and resided upon a farm consisting of 480 acres of land in McLean County. John Bender died intestate on August 13, 1951, and left surviving him a widow and ten adult children. In addition to the farm John Bender's estate consisted of some personal property including cash, the amount of which the record does not show. Under our laws of descent and distribution the widow inherited one-third of the estate and each of the ten children inherited one-fifteenth. The oldest son, Julius Bender, also a farmer in McLean County, was named administrator. Before the estate was closed it was proposed, the record does not show by whom, that the children should assign their interests in the estate to their mother. Eight of the ten children agreed to and did so assign their interests. Two of the children, Albert Bender, the youngest son, and Annette Blumhagen, a daughter who was married and lived in a distant state, refused to execute assignments. On settlement of the estate they received their shares of the personal property and were each decreed to be the owner of an undivided one-fifteenth interest in the farm.

During the course of probate Albert Bender filed a claim against his father's estate for wages in the sum of $4,200. This claim was not looked upon with favor by the administrator and some of the heirs and was finally compromised by the payment to Albert of $2,100. All of the estate except the shares of Albert and Annette was turned over to the widow, Caroline Bender. Caroline Bender later moved to Bismarck, North Dakota, where she purchased a house in which she resided with her unmarried daughter, Amelia, at the time of her death on September 19, 1953.

During the forenoon of July 23, 1952, Caroline Bender, accompanied by her son, Julius, appeared at the office of John E. Williams, an attorney at law in Washburn and told him that she wanted to make a will. She gave him the details as to how the will was to be drawn. He made notations of what the will was to contain and she and Julius left. Mr. Williams drew up a will. On the afternoon of the same day she returned to the office alone and the attorney read to her the will that he had prepared. The fourth paragraph of this instrument provided:

"It is my wish that my daughter, Annette Blumhagen, and my son, Albert Bender, receive no share of my estate, for the reason that they have received their interest in their father's estate."

She told the attorney that she had changed her mind about one portion of the will and stated the change that she wished to make. This change pertained to a bequest to Amelia, the daughter with whom she lived. It had no reference to the fourth paragraph which disinherited the contestants. The attorney then prepared a new will, the fourth paragraph of which was identical with the fourth paragraph of the draft that the attorney had prepared that morning. The eight children, excluding the contestants, were made residuary legatees in equal shares. The attorney read to her the new draft in its entirety, which she then executed in the presence of the attorney and his stenographer who signed as witnesses.

The contestants challenge the validity of the will on two grounds. They contend that at the time it was executed the testatrix was incompetent to make a will and was not of sound and disposing mind and

memory and that at the time of the execution of the will she was "under undue influence by or on behalf of persons who intended to profit thereby or who intended to deprive the respondents, as lawful heirs of the decedent, of their lawful rights; * * *."

There is no evidence in this record that at the time the testatrix appeared at the attorney's office to make her will she lacked capacity to make a testamentary disposition of her property.

■ "Where a will is contested on the ground that the testator did not have testamentary capacity, the inquiry and proof as to such capacity should be directed to the time when the will was executed. The critical inquiry in determining testator's mental capacity to execute a will is directed to his condition of mind at the very time he signed the will and evidence of his previous or subsequent conduct is admissible only so far as it may throw light on his mental condition at the precise moment that the will was signed." Stormon v. Weiss, N.D., 65 N.W.2d 475, 508.

■ The contestants strongly press the charge that the will, at least insofar as it disinherited them, was the result of undue influence. Time is also a factor in determining whether undue influence will destroy the validity of an otherwise valid will. While undue influence need not be exerted at the time of the execution of the will, yet in order to affect validity it must be operative at the time of execution. Drury v. King, 182 Md. 64, 32 A.2d 371; Page on Wills, Lifetime Edition, Section 191.

"We have often stated that to be undue, influence must operate at the time the will is made and must dominate and control the making of the will; that it must be such as to make the will express the purpose and intent of the person exercising the influence and not the purpose and intent of the testator; that undue influence is not

established by proof of opportunity to exercise and disposition to do so or by proof of persuasion and request." In re Eiker's Estate, 233 Iowa 315, 6 N.W.2d 318, 320.

■ The contestant, Albert Bender, testifies that in October 1951, which was some nine months before the will was made, he had a conversation with Julius Bender, administrator of his father's estate, regarding the claim that Albert had filed against the estate and Julius said: "if you don't stop that claim I will have mother make out a will and disinherit you." and that another brother, Edwin, who was present said: "That is what we are going to do." These statements express an intention on the part of Julius and Edwin to attempt to persuade the testatrix to disinherit Albert. There is no evidence that this intention was communicated to the testatrix, but if we assume that it was we regard evidence of these statements as having little probative value when we consider the time, place, and circumstances surrounding the execution of the will and the reasonableness of its provisions when viewed in the light of the conditions that prevailed at the time of the execution of the will with respect to the distribution that had been made of the father's estate.

■■ Contestants of a will challenging its validity on the ground of undue influence have the burden of sustaining their challenge. It is true, as the contestants point out, that where a verdict for the contestants is challenged on the ground of insufficiency of the evidence the court is required to consider the evidence in the light most favorable to the contestants. Stormon v. Weiss, supra; Nicholson v. Roop, N.D., 62 N.W.2d 473. But that does not mean that in order to sustain the verdict we may resort to mere suspicion or conjecture. In re O'Donnell's Estate, 158 Neb., 583, 64 N.W.2d 116.

■ We find no evidence in the record that the testatrix, who was 71 years of age at the time she executed her will, was of weak or vacillating mentality or that she

in any way was more subject than the normal person to influence or persuasion. Neither was there any unusual opportunity on the part of the proponent of the will to exercise undue influence upon her. She owned her own home in Bismarck where she lived with her daughter, Amelia. She provided in her will that Amelia was to have free use of this home for one year after her death. Amelia was also bequeathed $1,000 and personal property. But there is no evidence that Amelia in any way influenced the testatrix in making a testamentary disposition of her property. Evidence which merely shows that a party benefited by a will had both motive and opportunity to assert influence over the testator is not sufficient to invalidate a will where there is no evidence that such influence was actually asserted. Armstrong v. Armstrong, 65 S.D. 233, 272 N.W. 799.

The contestants point to the fact that Julius Bender who was named executor in the will accompanied the testatrix to the lawyer's office on the forenoon of the day the will was made and it is argued that he influenced her over the noon hour to change the bequest to Amelia. According to the undisputed testimony of Julius, after he and his mother left the lawyer's office his mother did not fully understand the bequest to Amelia that was provided for in the first draft which gave to her $5,000 of the money to be received from the sale of the house in Bismarck. The balance was to be divided equally among the seven children, excluding Amelia and the contestants. His mother expressed the thought that the $5,000 bequest to Amelia was too much. That was all that was said. After lunch Julius went home and the testatrix went back to the attorney's office. There she directed a change in the bequest so that Amelia would receive $1,000 from the sale of the house and the balance of the money from that sale was to be divided equally among her eight children, including Amelia and excluding the contestants. It is clear that in both drafts of the will the testatrix intended to exclude the contestants from any participation in the estate and that the change in the bequest to Amelia was her idea and not that of Julius.

There is a suggestion that the will itself appears to be the result of undue influence because it is unnatural and unjust in the exclusion of two of her children from participation in her estate. In both drafts of the will her reason for that exclusion is clearly expressed. The property that constituted her estate had passed to her from her husband's estate by the laws of descent and distribution and by assignment to her by eight of her ten children of their interest in his estate. As for the two contestants, she clearly expressed the wish that they receive no share of her estate for the reason that they had received their share of their father's estate, while the other eight children had turned their shares over to her. That reason is one that she might well have entertained under the circumstances and does not indicate an unnatural or unjust disposition of her estate.

The contestants complain that the trial court erred in excluding some additional testimony by Annette Blumhagen and another witness. While these alleged errors are not properly before us for review on this record, we have noted them in reading the transcript and without determining whether the court erred or not it is apparent that if the proffered evidence had been admitted the verdict would have still been without sufficient evidence to sustain it. See Ouren v. Friswold, 55 N.D. 664, 215 N.W. 160. The trial court was correct in determining that as a matter of law the will was valid and that the proponent was entitled to judgment notwithstanding the verdict. The judgment appealed from is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.