In the Matter of the ESTATE of Albert NYSTUEN, Deceased.

Ferdinand T. NYSTUEN and Raymond Nystuen, Respondents,

v.

Mrs. Sam NYSTUEN, Wallace Thompson, Executor; Joyce Racine Nystuen; Our Saviours Church of Zahl, North Dakota; Richard Earl Nystuen; Wayne David Nystuen; Orland Eugene Nystuen and James Carroll Nystuen; Mrs. Eva Nystuen, Special Guardian of James Carroll Nystuen, a minor, Appellees,

Richard Earl Nystuen; Wayne David Nystuen; Orland Eugene Nystuen; James Carroll Nystuen; Eva Nystuen, Special Guardian of James Carroll Nystuen, a minor, Appellants.

No. 7577.

Supreme Court of North Dakota.

Dec. 31, 1956.

Rehearing Denied Feb. 8, 1957.

Everett E. Palmer and Ray H. Walton, Jr., Williston, Clayton A. Gay, Morris, Minn., for appellants.

Paul Campbell, Minot, for respondents.

SATHRE, Judge.

This is an appeal from a judgment of the district court of Williams County, reversing a decree of distribution of the county court of Williams County, in a proceeding for the probate of the last will and testament of Albert Nystuen, deceased.

The decedent Albert Nystuen died testate on the 8th day of August 1951, Proceedings were thereafter had for admission of the said last will and testament to probate in the county court of Williams County, North Dakota.

The pertinent provisions of the will are as follows:

"I devise and bequeath the store building which I own at Hancock, Minnesota and all of my farm real estate to the four sons of my deceased brother, Elmer Nystuen, share and share alike. I devise to Mrs. Sam Nystuen a life estate in the house which I own at Hancock, Minnesota and upon her death that such property shall descend to Joyce Nystuen.

"I devise and bequeath all of the oil royalties and oil leases which I own to Our Saviors Lutheran Church of Zahl, North Dakota.

"All the rest and residue of the property which I may own or have power to dispose of at the time of my death I devise and bequeath equally to my four nephews above mentioned and to my niece Joyce Nystuen.

"I appoint Wallace Thompson of Zahl, North Dakota sole executor of this my last will and testament and direct that he be exempt from giving any bond as such executor.

"Dated at Williston, North Dakota this 6th day of August, 1951."

The will was witnessed by Gina Fero and Walter O. Burk residing at Williston, North Dakota, who stated that they signed the said will as witnesses at the request of the testator in his presence and in the presence of each other.

There was no contest in the county court as to the validity of the will, The only question for determination by the county court was the identity of the beneficiaries thereunder.

The difficulty with reference to the identity of the beneficiaries under the will was due to the language in the following paragraph.

"I devise and bequeath the store building which I own at Hancock, Minnesota and all of my farm real estate to the four sons of my deceased brother, Elmer Nystuen, share and share alike.

It is established by the record that the decedent had no brother by the name of Elmer Nystuen. He had however a nephew by the name of Elmer Nystuen who had four sons namely Richard Earl Nystuen, Wayne David Nystuen, Orland Eugene Nystuen, and James Carroll Nystuen. The only brother who had four sons was Peter Nystuen.

The will was prepared by an attorney of Williston, North Dakota, Walter O. Burk. He testified in county court that on the 6th day of April 1951 a nurse at the hospital where the decedent was at the time called him stating that Mr. Nystuen desired to see him. Mr. Burk accordingly went to the hospital but at that time the decedent had such a coughing spell and choking and gasping for breath that he could not make any intelligible statement. Mr. Burk called at the hospital sometime later the same day. At that time there were present Mr. and Mrs. Wallace Thompson, a Lutheran minister Pastor Bue, and Mr. Burk. Mr. Burk at that time took notes on a yellow pad statements made by the testator as to the disposition of his property. Mr. Burk was a witness at the hearing in county court for the admission of the will to probate. He testified there that he could not recall that the testator had made any statement as to a deceased brother. He testified further that he probably inserted the word *deceased* in the will of his own accord. Mr. and Mrs. Wallace Thompson who also were witnesses at the same hearing testified to the same effect as testified to by Mr. Burk.

Thereafter in due course the executor filed his final report and account. The order for hearing upon said final report and account contained the following recitation:

"You are further notified that the executor is uncertain as to how the last will and testament of said deceased could be interpreted and as to who are the beneficiaries, and at that time he will ask the court to construe the will."

The order and notice thereon fixed the hearing for the 26th day of July 1954.

At the hearing in county court upon the petition of the executor for approval of the final report and accounting the four sons of Elmer Nystuen, namely Richard Earl, Wayne David, Orland Eugene, and James Carroll, appeared and filed their answer to said petition in which they claimed that they were the beneficiaries under the will of the testator Albert Nystuen, and that said testator did not have a brother named Elmer Nystuen, but that the testator had

five brothers, namely: Olaf Nystuen, Henry Nystuen, Emil Nystuen, Sam Nystuen, and Peter Nystuen, all of whom had predeceased said testator; that none of said brothers had any children except Peter Nystuen, who had six children namely Elmer Nystuen, Joyce Nystuen Racine, Ferdinand T. Nystuen, Rueben Nystuen, Raymond Nystuen and Arnold Nystuen. Rueben had predeceased the testator. The answer further alleged that it was the intention of Albert Nystuen, the testator, to leave the items mentioned in paragraph III of said will and the residue mentioned in the residuary clause therein to the said four sons of Elmer Nystuen.

On September 17, 1954 the county court made its order approving the final report and account of the executor, there being no objection to same. The order further provided that the "bulk" of the evidence presented at the hearing points to the fact that it was the intention of the decedent Albert Nystuen that the four sons mentioned in paragraph III of the will were the sons of the nephew whose name was Elmer Nystuen. The concluding paragraph of the said order was as follows:

"Therefore it is hereby ordered, adjudged and decreed by this court that the four sons, mentioned in paragraph No. 3 of the last will· and testament of Albert Nystuen, deceased, formerly of Zahl, North Dakota, bearing date of the 6th day of August 1951, are the sons of Elmer Nystuen."

Thereafter and on February 17, 1955, the final decree of distribution was entered in the said estate. The final decree provided as follows:

"And it further appearing that the following named persons are the persons entitled to the residue of said estate by law, and the last will and testament of said decedent, to-wit: Richard Earl Nystuen; Orland Eugene Nystuen; Wayne David Nystuen; James Carroll Nystuen; Joyce Nystuen Racine."

The final decree was filed and recorded in the office of the county court of Williams County on the 17th day of February, 1955.

Thereafter and on the 23rd day of February, 1955, Ferdinand T. Nystuen and Raymond Nystuen, sons of Peter Nystuen, brother of the testator, filed and served notice of appeal from the final decree of distribution to the district court and demanded a trial de novo.

The respondents in county court made a motion to dismiss the appeal of the appellants to the district court on the following grounds:

1. That the appeal from the order allowing the final report and account and determining that the four sons of Elmer Nystuen were the legatees and devisees under the provisions of the last will and testament of said decedent was not taken within 30 days as provided by Section 30–2603, NDRC 1943.

2. That all matters in controversy in this action and upon this application had become res adjudicata by the failure of the appellants to appeal in a timely fashion as appears from the records and files in the county court.

3. That under Section 114 of the State Constitution which provides that:

"Appeals shall lie from the county court, final decisions of justices of the peace and police magistrates in such cases and pursuant to such regulations as may be prescribed by law,"

the legislature was without power to enact Section 30–2623, NDRC 1943 in that said section provides that if an appeal is taken from a decree or an order of the county court generally, all the issues must be tried and determined anew in the district court, and that therefore said section is violative of Section 114 of the State Constitution.

The district court denied the motion to dismiss the appeal and upon the merits re-

versed the final decree entered by the county court and held that Elmer Nystuen, Ferdinand T. Nystuen, Raymond Nystuen, and Arnold Nystuen, sons of the testator's deceased brother Peter Nystuen, were the beneficiaries under the will of the testator and judgment was entered accordingly. The four sons of Elmer Nystuen appealed and demanded a trial de novo in this court.

Numerous specifications of error are assigned, but may be consolidated and considered upon three grounds:

1. That the district court erred in denying appellee-appellants' motion to dismiss the appeal from the county court to the district court.

2. That under Sections 111 and 114 of the State Constitution the county court has exclusive original jurisdiction in probate and testamentary matters and on appeal the district court has appellate jurisdiction only and is limited to a review of errors committed by the county court.

3. That on the merits the evidence is insufficient to support the judgment.

■ The motion to dismiss the appeal from the county court to the district court on the grounds that such appeal was not taken within 30 days after the entry of the order approving the final report and account we conclude was without merit. The final order or judgment was the final decree of distribution which determined who were the beneficiaries under the will of the testator. The appeal from that decree was taken within a few days after its entry. We conclude therefore that the district court was correct in denying the motion to dismiss the appeal on that ground.

■ The next ground is whether or not under Sections 111 and 114 of the State Constitution the district court had the power to try the case de novo. Section 111 of the Constitution provides that county courts shall have exclusive original jurisdiction in probate and testamentary matters. Section 114 of the Constitution pro-

vides that appeals shall lie from the county court, final decisions of justices of the peace and police magistrates in such cases and pursuant to such regulations as may be prescribed by law.

The appellant argues that the legislature cannot under Sections 103 and 114 of the Constitution confer upon the district court the power to try a case de novo on appeal from a judgment of county court; that under Section 111 of the Constitution the county court had exclusive original jurisdiction in probate and testamentary matters and that under Sections 103 and 114 of the Constitution the district court, on appeal, must be limited only to a review of errors committed by the county court. The appellant argues therefore that it must follow that Section 30-2623 NDRC 1943 is unconstitutional in that it attempts to confer upon the district courts the power of trial de novo on appeals from the county court.

The language of Section 30-2623 is practically identical with the language of Section 7985, R.C.1905. The validity of this statute was directly challenged in the case of In re Peterson's Estate, 22 N.D. 480, 134 N.W. 751, 755. In that case an appeal was taken from a final decree of the county court of Benson County and a trial de novo had in district court. It was contended that under Section 111 of the Constitution the district court had no jurisdiction to try the action de novo. We quote from the opinion:

"Respondents urge that under section 111 of the Constitution the district court had no jurisdiction to try this action de novo, except upon the record, and that to do so would be assuming original jurisdiction in violation of the constitutional mandate. Section 111 provides that county courts shall have 'exclusive original jurisdiction' of this class of actions. Section 103 of the Constitution grants district courts general original jurisdiction, except where otherwise provided in the Constitution,

and 'such appellate jurisdiction as may be conferred by law.' Section 7985 [now Sec. 30–2623] provides of what such appellate jurisdiction shall consist, and that the district court may try the action de novo on appeal. It is by virtue of the right of appeal and the statute granting it that such trial anew is had, and this is not the exercise by the district court of the original jurisdiction. See In re Ray [Prante v. Lompe], 77 Neb. 377, 109 N.W. 496; Ribble v. Furmin, 69 Neb. 38, 94 N.W. 967, 968; Christianson v. [Farmers'] Warehouse Ass'n, 5 N.D. 438, 446, 447, 67 N.W. 300, 32 L.R.A. 730; Cavanaugh v. Wright, 2 Nev. 166. In the absence of constitutional prohibition the Legislature has the right to regulate appeals and prescribe the mode of exercise of review by the appellate court. 2 Cyc. 507. This contention is without merit. The decision of these practice questions also determines adversely to the contention of the respondents Miesen their motion to strike from the statement all matters excepting those appearing on the certified record from the county court filed in district court on the intermediate appeal."

We quote further from the case of Christianson v. Farmers' Warehouse Association cited in Re Peterson's Estate, supra [5 N.D. 438, 67 N.W. 302]:

" 'The essential criterion of appellate jurisdiction is that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised. This appellate jurisdiction may be exercised in a variety of forms, and indeed in any form which the legislature may choose to prescribe; but, still, the substance

must exist before the form can be applied to it.' We know of no clearer statement of the points under discussion than is contained in Judge Story's language. Appellate jurisdiction cannot create a cause. It must be first created and adjudicated by another judicial tribunal. Those facts existing, the appellate court may exercise its jurisdiction in any form the legislature may prescribe. The legislature may require the appellate court to review the facts, and render final judgment. If, in so doing, it exercises some of the same functions as a court of original jurisdiction, we answer that there is neither constitutional nor legal reason why it should not. Judge Elliot clearly shows that the power to render and enforce judgments is and must be inherent in every appellate court."

The constitution of the State of Nebraska, art. 5, § 16, provides that "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, * * * appointment of guardians" etc.

Another section of the Constitution provides: "Appeals to the district court from the judgments of county courts shall be allowed in all criminal cases, on application of the defendant; and in all civil cases, on application of either party, and in such other cases as may be provided by law." Art. 5, § 17. Nebraska also has a statute, Section 24–503 pertaining to the powers of county courts, which provides that "The county court shall have exclusive jurisdiction of the probate of wills, the administration of estates of deceased persons, and the guardianship of minors, insane persons and idiots."

Notwithstanding the statutory provision that county courts shall have exclusive original jurisdiction in probate and testamentary matters, the rule seems to be established in Nebraska that where an appeal is

taken from the county court to the district court the case is there triable anew. In re Ray, 77 Neb. 377, 109 N.W. 496, 498, it was held:

"It is a rule of practice established in this state that the district court shall, upon the reversal of a judgment of the county court, hold the case for trial upon the merits. Such is not an exercise of original jurisdiction. In Ribble v. Furmin, 69 Neb. 38–40, 94 N.W. 967, 968, it is said in the opinion by Pound, C.: 'The Legislature evidently intended that causes should be settled finally in the district court when taken there by appeal or error, and the parties should not be compelled to go back and forth from the lower to the higher tribunal in matters involving small sums as is so often the case in the more important causes brought in the district court and reviewed in the Supreme Court.'"

In the case of In re Estate of Glavkee, 76 N.D. 171, 34 N.W.2d 300, 308, an appeal was taken from a final decree of distribution of Grant County to the district court where the case was tried de novo and thereafter appealed to this court. The validity of Section 30–2623, NDRC 1943 was not challenged on constitutional or other grounds. Its provisions were followed and applied to the facts and issues in the case. The grounds upon which the appeal to this court was taken were stated in the opinion written by the late Judge Christianson as follows:

"The question as to what disposition the testator intended to make and did make of his property in his will, first arose upon the final decree of distribution. The appellants appealed from that decree to the district court, and specifically demanded a trial anew in the district court, and that 'all the issues therein be tried and determined anew in the said court, and said district court hear the allegations and proofs of the parties and determine all questions of law and fact therein.'"

We quote paragraph 9 of the Syllabus in that case:

"When an appeal is taken generally to the district court from a final decree of distribution of the county court, under the provisions of NDRC 1943, Sec. 30–2623, all the issues must be tried and determined anew in the district court and the court must hear the allegations and proofs of the parties and determine all questions of law and fact arising thereon according to the mode of trying similar issues originating in that court.' On the trial in the district court evidence may be adduced and received as though the issues were tried originally in the district court, and that court is not restricted to evidence that was received in and acted upon by the county court, unless 'the proofs on which the county court acted were submitted in the form of affidavits or otherwise appear of record.'"

The State of Utah has a constitutional provision, Article 8, Section 7 which is as follows:

"The District Court shall have original jurisdiction in all matters civil and criminal, not excepted in this Constitution, and not prohibited by law; appellate jurisdiction from all inferior courts and tribunals, and a supervisory control of the same."

In the case of State v. Johnson, 100 Utah 316, 114 P.2d 1034, 1038, the question of original jurisdiction and appellate jurisdiction was before that court. We quote from the opinion:

"Each judgment of the district court when first entered after trial is an original judgment, even though the cause may have been previously tried and a new trial granted. Each hearing which starts from 'scratch' and permits

the parties to produce all available proper evidence on all of the issues is an original hearing before the court, —one unfettered, unlimited, or unconfined by the hearing had before any other court or tribunal. So here the Constitution provides that the District Court has jurisdiction to frame its own issues, conduct its own hearing, and make its own determination in all cases civil and criminal, not prohibited by law. Parties litigant are thus assured the right to a trial upon the merits in the District Court when their cause reaches it in the manner provided by law. The right of the District Court to hear and determine for itself, upon its own record, any cause which is lawfully before the court cannot be denied because the Constitution grants it the jurisdiction to make an original determination."

And in 4 C.J.S., Appeal and Error, § 17, page 79:

"In its original and strictly technical sense, an appeal was a proceeding introduced into equity practice from the civil law by which the whole cause was removed from a lower to an appellate court, and there tried de novo upon evidence newly introduced, being subjected to a new and final determination as if it had not been tried before, and without any reference to the conclusion of the inferior court. To-day 'appeal' may still be used in a technical or limited sense to designate a particular form or method of review similar to the appeal in equity whereby the whole cause is removed to a superior court for a trial de novo and complete re-examination; but it has also become a term of general application in the law, which has various meanings in different jurisdictions and circumstances."

After a careful consideration of the judicial decisions cited and the law we have reached the conclusion that the legislature had the power under Section 114 of the Constitution to prescribe the procedure on appeal from the county court to the district court, and that Section 30–2623, NDRC 1943 is a valid enactment. It follows, therefore, that on the appeal from the county court to the district court all of the issues may be tried anew.

We now come to a consideration of the issues presented on the merits.

As already pointed out herein the will of the testator provides that the beneficiaries thereunder are "the four sons of my deceased brother Elmer Nystuen share and share alike". While the language of the will appears to be clear as to who are the beneficiaries thereunder, it is established by extrinsic facts that the decedent had no brother, dead or alive, by the name of Elmer Nystuen. He had however a brother, Peter Nystuen, who predeceased him and who had five sons, Elmer Nystuen, Ferdinand T. Nystuen, Raymond Nystuen, Arnold Nystuen and Rueben Nystuen. Rueben Nystuen had predeceased the testator, and there were only four sons of Peter Nystuen living at the time of the execution of testator's will. The language of the will therefore gives rise to a latent ambiguity as to who are the beneficiaries thereunder. It will therefore be necessary to resort to extrinsic evidence in order to determine the intent of the testator. Section 56–0524, NDRC 1943 reads as follows:

"When in applying a will, it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, but evidence of the declarations of the testator as to his intention cannot be received."

In 3 C.J.S., Ambiguity, page 1035, latent ambiguity is defined as follows:

"The term has been said to imply either, on the one hand, a concealment

of the real meaning or intention of the writer which does not appear on the face of the words used, until these words are brought in contact with collateral facts or until the facts are shown, or, on the other hand, a clear expression of the party's intention, and the existence of a doubt not as to the intention, but as to the object to which the intention applies, and, in the latter case, the necessity of extrinsic evidence to identify the object. The term has accordingly been defined as an ambiguity raised by evidence, or that arises from the proof of facts aliunde, one which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object or subject which they describe, or one which does not appear on the face of the language used or the instrument being considered, or when the words apply equally to two or more different subjects or things, as where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or evidence aliunde, creates a necessity for interpretation or a choice among two or more possible meanings."

In the case of In re Kahoutek's Estate, 39 N.D. 215, 166 N.W. 816, 819, this court said:

"As we understand the law as declared by sections 5686 and 5708, Com. Laws of 1913, and as laid down by both the English and the American cases, including the case of Patch v. White, 117 U.S. 210, 6 S.Ct. 617, 710, 29 L.Ed. 860, and on which counsel for respondent chiefly relies, it is that extrinsic evidence is not permissible to correct a mere mistake, but is only permissible where there is a latent ambiguity and where the false words or false description may be stricken out, and there still remains enough in the will to clearly evidence the intention of

the testator, and to describe the legatee or the property sought to be devised."

And in the case of Patch v. White, 117 U.S. 210, 6 S.Ct. 617, 619, 29 L.Ed. 86 the Court said:

"It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject; as where there is no such person or thing in existence, or, if in existence, the person is not the one intended, or the thing does not belong to the testator. The first kind of ambiguity, where there are two persons or things equally answering the description, may be removed by any evidence that will have that effect, either circumstances or declarations of the testator. 1 Jarman on Wills, 370; Hawkins on Wills, 9, 10. Where it consists of a misdescription, as before stated, if the misdescription can be struck out and enough remain in the will to identify the person or thing, the court will deal with it in that way, or, if it is an obvious mistake, will read it as if corrected. The ambiguity in the latter case consists in the repugnancy between the manifest intent of the will and the misdescription of the donee or the subject of the gift. In such a case evidence is always admissible to show the condition of the testator's family and estate, and the circumstances by which he was surrounded at the time of making his will."

At the hearing in county court upon the petition of the executor for approval of his final report and account all of the testimony was taken in shorthand by a court reporter and thereafter transcribed and is

before us as an exhibit on this appeal. There is no material dispute in the testimony of the witnesses in this case.

Mr. Burk, the lawyer who drew testator's will, testified at the hearing in county court and at the trial in district court, and his testimony is substantially as follows:

On August 6, 1951 he received a call from Mercy Hospital advising him that Albert Nystuen, a patient at the hospital, wished to see him. In response to the call Mr. Burk went to the hospital and found that Albert Nystuen wished to have him prepare his will. However he was too ill at that time to give any directions or to engage in any conversation. Mr. Burk then left the hospital but returned a few hours later when he found that Nystuen's condition was considerably better. Mr. Burk had with him a yellow sheet of paper upon which he made notations in accordance with the directions given him by the testator. This sheet of paper was introduced in evidence as an exhibit both at the hearing in county court and at the hearing in district court and is as follows:

"Sons of Elmer Nystuen

"House at Hancock to Joyce Nystuen daughter of Peter Nystuen.

"Mrs. Sam Nystuen to have use of house at Hancock for life then to Joyce Nystuen. Desire to be buried at Williston, N. D.

"All royalties on Montana land Our Saviors Lutheran Church at Zahl.
"Wallce Thompson

"Store in Hancock to 4 nephews

"Land to 4 boys

"No bond."

When Mr. Burk made these notations in accordance with directions given by the testator there were present Wallace Thompson and his wife and also a Lutheran minister. After having made the notations referred to Mr. Burk went to his office and there typed the will and returned to the hospital and read the will to the testator. He made some corrections as directed by the testator and the will was signed by the testator and witnessed by a nurse at the hospital Gina Fero and by Mr. Burk. The testator died two days thereafter on August 8, 1951.

Mr. Burk testified further that to the best of his recollection the testator did not refer to Elmer Nystuen as a "deceased" brother, and that he, Burk, inserted the word "deceased" of his own accord. Mr. and Mrs. Wallace Thompson who were present in the room of the hospital when Mr. Burk made the notations preparatory to drafting the will, testified that the testator did not refer to Elmer Nystuen as a "deceased" brother. They also testified that after making the notations on his memorandum sheet Mr. Burk asked Mrs. Thompson: "Have I got this right, it's the four sons of Elmer Nystuen?" And she replied "that is correct."

Mr. Wallace Thompson who was named as executor of the will testified that he had known the testator since 1923 and that they were friends and visited back and forth. He was present in the hospital room when Mr. Burk was making notes on a yellow sheet of paper and he read the notes after they were written. He testified further that Mr. Burk turned to Mrs. Thompson after having made his notations and asked: "have I got this right, the four sons of Elmer Nystuen?" She said "that is correct." With reference to this conversation Mr. Burk stated: "I don't recall if it was exactly that way. I know I talked to her in an effort to find out the names of those nephews because I wanted them in the will." Mr. Burk further testified that it was his impression at the time he was talking to the testator that the nephews mentioned were the four sons of Elmer Nystuen. Mr. Thompson testified that the testator said that the store building at Hancock, Minnesota, was to go to Elmer's four boys and that the farm land should also go to the four boys. Mr. Thompson testified further that the testator had been sick and in the hospital "a couple times" before his

last illness and that he asked the Thompsons to call Mrs. Elmer Nystuen, and that they called her, and that he also asked them to call Mrs. Elmer Nystuen during his last illness.

Mrs. Eva Nystuen, wife of Elmer Nystuen testified that the testator visited her and her husband about once a year at their home at Morris, Minnesota, when he came down on business; that he sent for her in October 1950 when he was ill and that she visited him in the hospital at that time; that at his request testator's doctor and nurse called her to come during his last sickness.

The testimony of Wallace Thompson and his wife is the only testimony in the case having any reference to the directions given by the testator to Mr. Burk preparatory to drafting the will. The testimony of the other witnesses establishes the fact that the testator had five brothers, all of whom had predeceased him, and that only one of them, Peter Nystuen, had any children. Five of the children were living at the time of the execution of testator's will, namely Ferdinand T. Nystuen, Raymond Nystuen, Elmer Nystuen, Arnold Nystuen and Joyce Nystuen Racine.

The will as originally drawn by Mr. Burk provided that "I devise to Mrs. Sam Nystuen a life estate in the house which I own at Hancock, Minnesota and upon her death such property shall descend to her daughter Joyce Nystuen". When Mr. Burk read the will to the testator he, the testator, objected to the words "her daughter" and said it was wrong and that she was not a daughter of Mrs. Sam Nystuen. The words "her daughter" were stricken before the testator signed the will.

Paragraph III of the will provided that certain property mentioned therein shall go "to the four sons of my deceased brother Elmer Nystuen". Paragraph VI of the will provided that "all the rest and residue of the property which I may own or have power to dispose of at the time of my death I devise and bequeath equally to my four

nephews above mentioned and to my niece Joyce Nystuen."

The language quoted from paragraph III and VI presents no ambiguity. In paragraph III the testator makes it clear that the property mentioned therein shall go to the four sons of a deceased brother, and in paragraph VI he identifies the four sons mentioned in paragraph III as his four nephews and Joyce Nystuen as his niece.

The latent ambiguity arises because of the fact that the testator had no deceased brother named Elmer Nystuen. Had the testator named Peter instead of Elmer as his deceased brother there would have been no latent ambiguity. By substituting the name Peter for Elmer it becomes clear that the objects of the testator's bounty were his four nephews and his niece since they are the only living children of a deceased brother.

The latent ambiguity is thus removed and the intent of the testator clearly expressed by the words he had chosen. The principle of construction applicable in such cases is stated in 57 Am.Jur., Wills, Sec. 1109, page 710.

"The rule is frequently laid down that direct evidence of the testator's intention is not admissible except where the will contains an equivocation, that is, where it applies equally to two or more persons or pieces of property, or at least where it contains a latent ambiguity. Where a true equivocation exists, and the will is in terms applicable indifferently to two or more persons or properties, it is generally recognized that direct evidence of the testatorial intention is admissible, the theory being that such evidence shows what the testator actually meant to do, and when that is known it is at once perceived that he has in fact done it by the words he has chosen."

The will as read to the testator and as signed by him in the presence of witnesses provided specifically that the rest and

residue of his property should go to "my four nephews above mentioned and to my niece Joyce Nystuen." Under the language of the will and the record before us it clearly was the intention of the testator, Albert Nystuen, to make his four nephews and his niece, children of his deceased brother, Peter Nystuen, the beneficiaries under his will.

The judgment of the district court is affirmed.

BURKE, C. J., and GRIMSON and JOHNSON, JJ., concur.

MORRIS, Judge (concurring specially).

I concur in the opinion prepared by Judge SATHRE. Bryan v. Miller, 73 N.D. 487, 16 N.W.2d 275, and Nomland Motor Company v. Alger, 77 N.D. 29, 39 N.W.2d 899, have been cited as supporting the argument that Section 30–2623, NDRC 1943 is unconstitutional. They deal exclusively with the jurisdiction of the justice court but they do contain language which expresses a line of reasoning that is not in accord with our conclusion that Section 30–2623 is constitutional. Those cases involve a different statute and are not in conflict with this decision but the insistence with which they are stressed prompts me to express what I believe to be further cogent reasons why the decision in this case is correct.

In addition to the general presumption that enactments of the legislature are constitutional we have in this case two additional rules that support constitutionality, The first is that long acquiescence in the constitutionality of a statute may properly be considered in determining its validity in a doubtful case. The second rule is that where the highest court of the state has held a statute constitutional and the statute is subsequently attacked upon identical grounds the statute will not be held invalid except for the most convincing and compelling reasons.

In this state the practice of trying a case completely anew in the district court upon an appeal from the county court is innate. It was provided for in Section 326 of the Territorial Probate Code and was adopted in substantially its present form by Section 6275 of the Revised Codes of 1895. A trial anew in the manner prescribed by Section 30–2623 has been the practice generally accepted and followed by the bench and bar since statehood. A number of cases that were tried anew have been appealed from the district court to this court without challenge to the method of trial in the court below, among the more recent being: In re Glavkee's Estate, 76 N.D. 171, 34 N.W.2d 300; In re Bratcher's Estate, 76 N.D. 194, 34 N.W.2d 825; Stormon v. Weiss, N.D., 65 N.W.2d 475; Bender v. Bender, N.D., 72 N.W.2d 220.

The widespread acquiescence in not only the existence of the statute in question but in its general use throughout practically the entire history of the state by the legislature, the people, the lawyers, and the courts weighs in favor of its constitutionality. Linck v. City of Litchfield, 141 Ill. 469, 31 N.E. 123; Goodall v. Henkel, 60 Mich. 382, 27 N.W. 556; Miller v. Enterprise Canal & Land Co., 142 Cal. 208, 75 P. 770, 100 Am.St.Rep. 115; County Commissioners of Somerset County v. Pocomoka Bridge Co., 109 Md. 1, 71 A. 462, 16 Ann. Cas. 874 and note; 11 Am.Jur., Constitutional Law, Sections 81 and 83; Kyle v. Abernathy, 46 Colo. 214, 102 P. 746.

The acquiescence heretofore discussed has had one interruption as disclosed by the opinion of this court in the case of In re Peterson's Estate, 22 N.D. 480, 134 N.W. 751, when the statute under consideration, then Section 7985, Revised Codes of 1905, was held constitutional against the identical challenge now urged. That decision was rendered January 11, 1912, and stood without being questioned in this court for over 44 years. In that case the question of constitutionality then and now at bar was considered and discussed in both the original

opinion and in an opinion filed on petition for rehearing wherein the same arguments are considered that are now made in this court.

In passing upon the constitutionality of a statute relating to the publication of a notice permitting redemption of real estate sold at tax sale the supreme court of Montana said:

"The general rule is that when the highest court of a state has construed a constitutional provision, the rule of stare decisis—that a question once deliberately examined and decided should be considered as settled—applies, unless it is demonstrably made to appear that the construction manifestly is wrong. Decisions construing the Constitution should be followed, in the absence of cogent reasons to the contrary, as it is of the utmost importance that our organic law be of certain meaning and fixed in interpretation." State ex rel. Kain v. Fischl, 94 Mont. 92, 20 P.2d 1057, 1059.

In Walling v. Brown, 9 Idaho 740, 76 P. 318, 2 Ann.Cas. 720, it is said:

"When the beneficial results to be obtained by a departure from the construction and interpretation placed by this court upon a constitutional or statutory provision will not greatly exceed the disastrous and evil effects likely to flow therefrom, the court will decline to reopen those questions, where rights and interests have become settled under such decisions, and they have been acquiesced in by the Legislature and the people for any reasonable period of time."

Both of the foregoing quotations appear in the more recent case of Scott v. Gossett, 66 Idaho 329, 158 P.2d 804.

In State ex rel. Pitts v. Nashville Baseball Club, 127 Tenn. 292, 154 S.W. 1151, 1154, Ann.Cas. 1914B, 1243, it is said:

"Decisions construing the Constitution or acts of the Legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that our organic and statute law be of certain meaning and fixed interpretation."

This quotation is repeated in Humphries v. Manhattan Savings Bank & Trust Co., 174 Tenn. 17, 122 S.W.2d 446. To the same effect Daniel's Administrator v. Hoofnel, 287 Ky. 834, 155 S.W.2d 469.

For reasons herein set forth as well as those expressed in the majority opinion I concur in the affirmance of the judgment of the district court.

I am authorized to state that Judge JOHNSON concurs herein.

### On Petition for Rehearing

SATHRE, Judge.

The appellants have petitioned this court for a rehearing.

The petition is a reargument of the facts. All of the points raised in the petition were fully considered and disposed of in the original opinion herein.

The petition states further that the propriety of the trial court's finding allowing the respondents costs and reimbursements was raised in their brief but was not touched upon by this court in its opinion herein. The matter of costs was not argued in appellant's brief or on oral argument. It must therefore be deemed abandoned and cannot now be raised on petition for rehearing. Assignments of error and issues not argued in briefs are deemed abandoned and need not be considered on appeal. Clark v. Josephson, N.D., 66 N.W. 2d 539; Mevorah v. Goodman, N.D., 68 N. W.2d 469; Iszler v. Jorda, N.D., 80 N.W. 2d 665.

Rehearing denied.

GRIMSON, C. J., and MORRIS, BURKE and JOHNSON, JJ., concur.